No. 83-181

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

KATHLEEN RACHEL WILKINSON,

      Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ferguson & Mitchell; Carol Mitchell argued,
        Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Chris Tweeten argued, Asst. Atty. General, Helena
        Robert L. Deschamps, III, County Attorney, (Karen
        Townsend, Deputy) Missoula, Montana

Submitted: 1/19/84

Decided: 3/26/84

Filed: MAR 2 6 1984

*Ethel M. Harrison*

———————————————————
            Clerk

Mr Justice John Conway Harrison delivered the Opinion of the Court.

The appellant, Wilkinson, appeals from an order of the Missoula County District Court, denying her motion either to withdraw her plea of guilty to a reduced charge of negligent homicide, or be sentenced in accordance with a plea bargain struck by the parties. We affirm the action of the District Court.

The facts surrounding the case involve the death of 19-month-old Paul Tucker Wilkinson, on February 23, 1982, who was found dead in an East Missoula trailer, where he resided with his mother, the appellant, and her boyfriend, William Russell Sigler. Within a month of the death, on March 18, 1982, the appellant was charged with a negligent homicide in connection with the death of her son. This charge was based upon her failure to secure medical attention for her child. Sigler was charged with deliberate homicide. When subsequent investigation convinced the County Attorney's office that the accountability theory, approved by this Court in State v. Powers (Mont. 1982), 645 P.2d 1357, 39 St.Rep. 989, might apply, the negligent homicide charge against the appellant was dismissed and a new information was filed charging her with deliberate homicide.

The trials of the appellant and Sigler were bifurcated upon motion of defense counsel for Sigler. The Sigler trial was scheduled to begin in early August of 1982, while that of the appellant was set for a later date. In July, 1982, the appellant's counsel approached the State about a possible plea bargain. While the State was generally

willing to accept a guilty plea to a reduced charge of negligent homicide, the State was unwilling to agree to two of appellant's demands. Those demands were: (1) that the State either agree to recommend probation or make no recommendation as to incarceration; (2) that a dependant and a neglected child action relating to the then-pregnant appellant's unborn child be dropped.

At the time the Sigler trial commenced on August 4, 1982, no plea bargain agreement had been reached between the appellant and the State.

The State sought the appellant's testimony against Sigler. With this object, on August 7, 1982, the State offered to reduce the charge against the appellant to negligent homicide and to recommend a sentence of ten years imprisonment with seven years suspended if the appellant would plead guilty, give a sworn statement and testify against Sigler. The prosecution furnished a chart to the appellant to use in computing parole eligibility dates within the various sentences then under consideration. The appellant's counsel advised her that the court was not bound by the prosecutor's recommendation. The appellant offered to accept the prosecution's proposal if the recommended suspended sentence was increased from seven to eight years, since under a sentence of ten years with eight suspended she would be eligible for release on parole before the birth of her baby. The prosecution accepted the offer, and the defendant made a sworn statement and testified against Sigler during his trial.

Two days later, on August 13, 1982, the appellant, her counsel and the Deputy County Attorney, Karen Townsend,

traveled to Polson from Missoula to allow the appellant to change her plea before Judge Green, who was sitting in Lake County. During the trip, Townsend again informed the defendant that neither her sentence nor parole was guaranteed, and that the court was free to disregard the recommendation of the State. Townsend also informed the appellant that Judge Green had not followed prosecution sentence recommendations in similar cases.

During the hearing in Polson, Ms. Townsend spread the elements of the plea bargain on the record:

> "MS. TOWNSEND: Your Honor, I think prior to the time Miss Wilkinson answers this, I would like to state for the record, which I think the Court is probably aware of through media coverage, that there has been, in fact, a plea bargain that has been entered by myself and Ms. Mitchell with respect to this particular charge. Part of that plea bargain has been fulfilled by the filing of this Amended Information with a reduced charge.
>
> "Secondly, I have agreed to recommend to the Court at the time of sentencing a sentence for Miss Wilkinson which would be no more than ten years in the Montana State Prison with all but eight suspended.
>
> "Further, the bargain is that Ms. Mitchell—
>
> "THE COURT: You said all but eight suspended?
>
> "MS. TOWNSEND: I'm sorry, eight suspended. In other words, with two left.
>
> "Further, Ms. Mitchell and Ms. Ferguson are free to argue to the Court for a complete probationary sentence if they would wish to. So they are not bound to agree to that.
>
> "Finally, Your Honor, I think the Court does know there is a sort of a companion civil case in connection with this particular incident. There has been no agreement to whether we will drop or

continue, and that case will proceed as is."

The appellant's counsel agreed that Townsend's statement covered the terms of the plea bargain. Judge Green then questioned the appellant as to her understanding of the plea bargain:

"THE COURT: Well, Miss Wilkinson, you understand that the Court had no part in this agreement?

"THE DEFENDANT: Yes, I do, Your Honor.

"THE COURT: The Court has not bound itself to follow the recommendations of the county attorney. I haven't done it in this case, and I never will. It's up to the Court to determine the proper sentence after I have received the pre-sentence report and considered everything that is pertinent in your case.

"THE DEFENDANT: Yes, I do, Your Honor.

"THE COURT: So there have been no promises made to you outside of the recommendation that the county attorney will make to the Court.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: You understand that? Now knowing this, do you wish to withdraw your plea of guilty as charged at this time?

"THE DEFENDANT: No, Your Honor."

The court further advised the defendant that under her guilty plea she could be sentenced to up to ten years in prison and fined $50,000. She responded that she understood. The court ordered a presentence report and set sentencing for September 10, 1982.

At sentencing, the appellant called as witnesses Joe Sobansky, the probation officer, and Dr. Will Stratford, a psychiatrist who had examined the appellant. Sobansky had recommended a ten year sentence with none suspended, and

-5-

defense counsel's examination of him, covering some eight pages of transcript, attempted to show that he had inadequately investigated the case, in part by failing to consult Dr. Stratford. Townsend's cross-examination of Sobansky, covering less than two pages of the transcript, brought out the reason Stratford had not been contacted--he had made no report--and retraced Sobansky's reasons for his recommendation, which had been elicited on direct examination. Defense counsel had no objection to this cross-examination. Defense counsel's examination of Dr. Stratford, covering some seven pages of transcript, focused on Stratford's opinion of the appellant's mental condition and the appropriateness of the recommended sentence. Townsend's cross-examination, covering approximately three pages of transcript, inquired as to the likelihood of rehabilitation, the fact that counseling would assist the appellant and that appellant would need vocational training as a condition of her suspended sentence, and what other conditions the doctor would recommend. The court in addition cross-examined Dr. Stratford.

Townsend then unequivocally recommended a sentence of ten years with eight suspended, as agreed under the plea bargain. Her recommendation discussed her reasons in depth and at length. Defense counsel then argued for the plea bargain, although suggesting that a lesser sentence was appropriate, particularly recommending that the appellant receive no jail time. The court then imposed a sentence of ten years with two years suspended.

Thereafter the appellant moved on September 20, 1982, to withdraw her guilty plea, or in the alternative that her

-6-

sentence be vacated and that she be resentenced in compliance with the prosecutor's recommendation. The court set the motion for hearing on October 22, 1982. At the hearing, defense counsel withdrew the motion to withdraw the plea and sought only a new sentence of ten years with eight suspended. Appellant testified that she had agreed to the plea bargain only because she wanted to be released on parole before the birth of her child. She acknowledged to the court that she had been advised by Ms. Townsend and by Judge Green that the sentence recommendation was not binding, but stated that she thought the judge would go along, and that the judge's inquiry at the plea proceeding was but a formality.

The appellant also presented testimony from an eight-time felony convict and two public defenders to the effect that most defendants would subjectively believe the prosecutor's recommendation would be followed. One of the appellant's attorneys, Paulette Ferguson, testified that the appellant accepted the plea bargain because she wanted to be paroled before the birth of her baby. Ferguson told the appellant that Judge Green was not bound by the recommendation, and that parole eligibility did not guarantee that the appellant would be paroled. Ferguson admitted that the plea bargaining did not prevent Ms. Townsend from cross-examining defense witnesses at sentencing and that the prosecution had no prior notice of the recommendation that defense counsel would offer at sentencing.

Following the sentencing, Judge Green entered detailed findings and conclusions in support of his decision

rejecting the appellant's motion. The court found as fact that the appellant had been advised by Townsend, by her own counsel twice, and by Judge Green, that the prosecutor's recommendation did not bind the court. The court further found that Ms. Townsend had made the recommendation agreed upon in the plea bargaining. The court concluded that the appellant's plea was knowingly and voluntarily made, and that in particular she was advised that the court was not bound by the recommendation, and that the prosecutor had fully complied with the plea bargaining.

At the time this case arrived, there was also pending the case of State v. Cavanaugh (Mont. 1983) 673 P.2d 482, 40 St.Rep. 2007, wherein this Court adopted the ABA Standards requiring the sentencing court to inform a defendant if it is not going to accept the entire plea bargain, and then give the defendant an opportunity to affirm or withdraw the guilty plea. See, ABA Standards Relating to The Administration of Criminal Justice; Function of the Trial Judge, section 4.1(c) (1974), and ABA Standards, supra, Pleas of Guilty, sections 2.1 and 3.3, (1974). As noted in that opinion a majority of other state jurisdictions as well as the federal courts follow this procedure. See, Federal Rules of ~~Civil~~ Crim. Procedure, 11(e)(4).

This Court split four to three. However, the decision in Cavanaugh concluded that the standards were to be adopted, but the decision would be prospective only. Therein we stated:

"We therefore adopt the previously discussed standards of the American Bar Association and F.R.~~Civ~~Crim. P. 11(e)(4), and require the trial judge, who accepts a plea but rejects any other portion of the plea bargain, to afford the defendant the

> opportunity to withdraw his guilty plea
> and enter a plea of not guilty.
>
> "The decision in this case shall have
> prospective application only. The
> decision applies to defendant James
> Cavanaugh and all who are sentenced after
> the effective date of this decision. In
> support of this prospective holding, see
> State v. Campbell (1979), 182 Mont. 521,
> 597 P.2d 1146." 673 P.2d at 485, 40
> St.Rep at 2011.

There, we established a new procedural requirement for sentencing. In accordance with the requirement in effect at the time of the sentencing, the experienced trial judge carefully advised the appellant that he would not be bound by the recommendation of the prosecution. Her own counsel, several times, so advised her, as did the prosecuting attorney in the case. We find that criminal justice would be seriously hampered by requiring conformity to an unannounced new procedure of any trial judge in this state.

As stated by this Court in the unanimous opinion, State v. Campbell (1979), 182 Mont. 521, 597 P.2d 1146:

> "It should be obvious that retroactive
> application of this rule would seriously
> retard its operation. Litigants have a
> right to rely on the law in effect at the
> time. The administration of justice
> would be seriously hampered by requiring
> conformity to an as yet unannounced new
> procedural requirement. Law enforcement
> agencies and courts are entitled to rely
> on the rules pertaining to guilty pleas
> in effect at the time the guilty plea was
> entered and to determine voluntariness on
> the basis of such law." 182 Mont. at
> 526, 597 P.2d at 1149.

In addition in Campbell, supra, we referred to prior decisions of this Court and the United States Supreme Court, in denying retroactive application of the decision.

We note in addition, that the appellant now is on parole, having been given credit for time she served in the

-9-

county jail, has been employed and is under supervision of state authorities. The crime for which she entered a plea was serious, homicide, and reviewing the entire transcript and file on this case, we are of the opinion that she received "substantial fairness" by the judicial system of this state.

The decision is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Hon. Chan Ettien, District
Judge, sitting in place of Mr.
Justice Frank B. Morrison, Jr.

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

Honorable Chan Ettien, District Judge, dissenting:

I dissent.

In State v. Cavanaugh (Decided December 23, 1983), ____
P.2d ____, 40 St.Rep. 2007, Cavanaugh was sentenced September
19, 1977.

Wilkinson was sentenced August 13, 1982.

The Cavanaugh ruling is retroactive in favor of its
subject to September 19, 1977, but on the way back by-passes
a judgment on Wilkinson imposed five years later.

The logic of the majority escapes me when both cases
were pending before this Court at the same time.

The Cavanaugh rule should be retroactive from the date
of its judgment, September 19, 1977.

While it appears, practically, that Wilkinson has
nothing to gain by reversal, I would reverse and remand for
her option to change her plea if she wishes, in keeping with
the doctrine of fundamental fairness.

_____
Honorable Chan Ettien, Dis-
trict Judge, sitting in place
of Mr. Justice Frank B.
Morrison, Jr.

Justice John C. Sheehy, dissenting:

I dissent to the manifest injustice done by this decision to Kathleen Rachel Wilkinson.

Kathleen without dispute here had an invincible wish to bear the child she was then carrying outside the prison walls. To achieve this, she consented by plea bargain to provide the evidence without which the State could not have convicted Sigler, but the evidence incriminated herself. Now the State, worse than Shylock, has extracted the benefit of a fine quillet of the law--Judge Green told her before her sentencing, but after she had fully performed her part of the agreement, that he was not bound by the plea bargain. It is not enough here, as it was in Cavanaugh, cited above in the majority opinion, that she be given a chance to withdraw her plea of guilty. Her prior evidence given in Sigler would convict her now. As Brandeis said in Omstead v. United States (1928), 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (Brandeis, J., dissenting), our government teaches the whole people by its example. The teaching here is, beware of the State: it will trick you if it can. We should order the District Court in this instance to follow scrupulously the terms of the agreement the State was so eager to procure (even though the result she sought to obtain is now beyond our power). Only then can this Court wrap itself in the robe of "substantial fairness."

I also disagree that we must not apply the Cavanaugh rule here because of our prospective-only line in that case. Wilkinson got to this Court before Cavanaugh, and in a procedural process beyond Wikinson's control, Cavanaugh leap-frogged Wilkinson. Injustice is injustice. She sustained a greater injustice than did Cavanaugh. Are we powerless to remedy injustice?

_____
         Justice

-12-

DISSENT OF MR. JUSTICE DANIEL J. SHEA

No. 83-181

STATE OF MONTANA,

    Plaintiff and Respondent,

        vs.

KATHLEEN RACHEL WILKINSON,

    Defendant and Appellant.



FILED

JAN 8 - 1985

Ethel ⁄⁄ ___ ⁄⁄son
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea, dissenting:

I dissent.  In State v. Cavanaugh (Mont. 1983), 673 P.2d 482, 40 St.Rep. 2007, in dissent, I stated our holding should be given retroactive application on due process grounds.  If so, defendant Wilkinson would be given the benefit of our holding in Cavanaugh.  But even if it were not given full retroactive application, the holding in Cavanaugh should at least apply to all plea entry situations that took place on or after the date Cavanaugh entered his plea--September 19, 1977.  If a violation occurred, and the majority certainly held a violation occurred by giving Cavanaugh relief, then all violations that took place on that same date or on any date after September 19, 1977, would be given the benefit of the Cavanaugh ruling. If so, the defendant Wilkinson would be entitled to relief in this case.

Another gross inequity exists here.  Although we decided the issue in Cavanaugh, the issue was not raised in that case.  Rather, it was first raised in the present case.  It just so happened that the Cavanaugh case was decided before the present case, although the present case was then pending before this Court.  It is totally unfair not to give Wilkinson the benefit of the very issue she raised in her appeal simply because we decided the issue first in another case in which the issue had not even been raised.

_Daniel J. Shea_
                        Justice