No. 83-428

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN MATTER OF DECLARING
C.L.R., Youth in Need of Care.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ferguson & Mitchell, Paulette C. Ferguson,
Missoula, Montana
Martha E. McClain argued for Appellant, Missoula,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert F.W. Smith argued, Asst. Atty. General, Helena
Robert L. Deschamps, III, County Attorney, Missoula,
Montana
Robert Terrazas argued, Deputy County Attorney,
Missoula, Montana
Morales, Volinkaty & Harr; James P. O'Brien argued
for the Youth, Missoula, Montana

Submitted: April 19, 1984

Decided: July 31, 1984

Filed: JUL 31 1984

*Ethel M. Harrison*
───────────────────────────────
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

William R. Sigler appeals an order issued by the Fourth Judicial District Court, Missoula County, terminating his parental rights of C.L.R. He also appeals from the denial of his motion for a stay in the proceedings. We affirm.

From October 1981 until February 1982, Kathy Wilkinson and William Russell Sigler lived together with Wilkinson's son in East Missoula, Montana. On February 23, 1982, Paul Wilkinson, Jr. died as a result of internal injuries sustained from being struck in the abdomen. Wilkinson pled guilty to negligent homicide for said death. A jury found Sigler guilty of deliberate homicide for the child's death. The court found him to be a dangerous offender and gave him a sixty year sentence. See State v. Sigler (Mont. 1984), _____ P.2d _____, 41 St.Rep. 1039.

At the time of the arrest of the parties, Wilkinson discovered she was pregnant. On October 25, 1982, Wilkinson gave birth to C.L.R.; Sigler was the natural father. At the time of the birth, both Sigler and Wilkinson were incarcerated. On October 25, 1982, the State filed a petition for temporary investigative authority and protective services. The court granted temporary custody of C.L.R. to the State. On April 14, 1983, the State filed a petition for temporary custody of C.L.R.

The trial court held a hearing at which both parents stipulated that C.L.R. was a Youth in Need of Care. At the hearing the State presented its treatment plans for improving the parties' parenting skills and to assure the

proper care and treatment of C.L.R. Testimony revealed that it would be impossible for Sigler to properly parent C.L.R. due to his violent nature and the fact he will remain in prison for at least the next eighteen years. Following the hearing, the court amended the petition, pursuant to section 41-3-401(11), MCA, and terminated Sigler's parental rights. The court concluded that no treatment plan was feasible for Sigler. Therefore, the child's best interests dictated termination of the parental relationship. The court accepted the plan for Wilkinson but stated if she failed to properly perform said plan, her parental rights would also be terminated.

Appellant raises the following issues:

(1) Did the District Court err in terminating Sigler's parental rights with C.L.R.?

(2) Did the District Court err in denying Sigler's motion for a stay of proceeding until the pending criminal appeal terminated?

Appellant first contends that the trial court erred in terminating his parental rights by failing to properly follow the requirements as set forth in section 41-3-609(1), MCA. The pertinent part of that section reads:

> "Criteria for termination. (1) The court may order a termination of the parent-child legal relationship upon a finding that the circumstances contained in subsection (1)(a), (1)(b), or (1)(c), as follows, exist:
>
> ". . .
>
> "(c) the child is an adjudicated youth in need of care and both of the following exist:
>
> "(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has

not been successful; and

"(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time."

Appellant argues that this language requires establishing a treatment plan prior to termination of parental rights. In the instant case, the court terminated parental rights without first establishing the necessary plan. The failure to follow the procedural requirements constitutes error and requires the trial court's order to be set aside for further proceedings. We disagree.

The Montana Legislature derived the Parent-Child Legal Relationship Termination Act of 1981, by-and-large from section 19-4-101 et seq., Colo. Rev. Stat. (1973). These statutes establish the necessary procedures for termination of the parental right. The act sets forth its purpose in section 41-3-602, MCA: "41-3-602. Purpose. This part provides procedures and criteria by which the parent-child legal relationship may be terminated by a court if the relationship is not in the best interest of the child. . . " (Emphasis added.)

Appellant argues that the act specifically requires establishment of a treatment plan prior to termination. He cites several Colorado cases for support. In People in Interest of M.C.C. (Colo. 1982), 641 P.2d 306, the Colorado Court of Appeals held that the single fact that the parent was incarcerated does not, per se, prohibit the creation and implementation of a treatment plan. That court, remanded the case for further proceedings. The trial court failed to establish a treatment plan prior to termination of parental rights. The father was incarcerated at the time of the

-4-

court action and insufficient findings existed to determine if his criminal activities and incarceration made him unavailable for the establishing of an appropriate treatment plan.

The Colorado Supreme Court stated in People in Interest of C.A.K. (Colo. 1982), 652 P.2d 603, 611: "[A] treatment plan must be approved by the court prior to any termination of parental rights . . . In many cases, it would be impossible to devise a plan, under which success could be guaranteed."

This is a case of first impression in the State of Montana. All of the Colorado cases except People in Interest of M.C.C., involve cases where the Court established treatment plans. The court reversed People in Interest of M.C.C., not specifically because of the failure to establish a treatment plan, but because the trial court failed to make sufficient findings to support its conclusion that no appropriate treatment plan could be established. However, the line of Colorado cases suggested a treatment plan must be established prior to termination. No cases exist as in the instant case where the facts clearly show the impossibility of establishment of even a marginally successful treatment plan.

The trial court set forth extensive findings and conclusions to support its order to terminate the parental rights of the appellant. Those findings included a graphic description of appellant's brutal abuse of C.L.R.'s half brother Paul Wilkinson, Jr., that lead to his death. The court concluded its findings as follows:

"49. The seriousness of the abuse inflicted on Paul Wilkinson, Jr. by . . . Sigler demonstrates the hopelessness of any type of treatment plan.

"50. Respondent Sigler's brutally violent treatment of Paul Wilkinson, Jr., creates an impermissible risk to the safety and well-being of C.L.R.

"51. Respondent Sigler's actions have caused the foreclosure of his rights to assert any interest in this child.

"52. Respondent Sigler has a history of violent behavior.

"53 Respondent Sigler is under a long-term confinement (60 years) in the State Prison for deliberate homicide.

"54. Respondent Sigler caused the death of the [half] brother of C.L.R.

"55. The conduct and condition of . . . Sigler rendering him abuse [sic] and neglectful is unlikely to change.

"56. It is in the best interest of the child to terminate the parent-child legal relationship between Respondent . . . Sigler and C.L.R.

" . . .

"Having found that the child would not receive even minimally satisfactory care and would be exposed to extremely high chances of neglect, abuse, and even death if Respondent Sigler were ever allowed to care for the child, this court orders, in accordance with section 41-3-609 Mont. Code Ann., that the parent-child legal relationship between William Russell Sigler and C.L.R. is terminated."

The trial court acted properly in termination of the parental rights of appellant, Sigler. However, we sound a stern warning that this Court will not permit the termination of parental rights without first establishing a treatment plan unless a showing of facts clearly proves the impossibility of any workable plan.

We next turn to appellant's last issue, that the court

-6-

erred by denying his motion for a stay in the proceedings. Sigler contends that in order to testify at his termination of parental rights hearing, he would jeopardize his Fifth Amendment rights to remain silent. He contends the State compelled him to testify because if he failed to testify, he risked the loss of his parental rights. Appellant set forth several cases where a violation of the Fifth Amendment occurred due to compelled testimony. The Fifth Amendment protects persons against testifying against themselves. This protection covers not only criminal proceedings but also other proceedings where compelled testimony could lead to future prosecution. Lefkowitz v. Turley (1973), 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274. We fail to find the State compelled appellant to testify.

The key to this rests with determining if appellant is compelled to testify or merely required to make tactical decisions regarding the defense of his position. The cases cited by appellant clearly illustrate instances where had the defendant failed to testify at a proceeding, he would have suffered certain substantial loss as a result of that failure to testify.

The Family Court in Matter of Roman (Fam.Ct.Ono.Co. 1978), 94 Misc.2d 796, 405 N.Y.S.2d 899 dealt with a similar issue. That court reasoned that if a person could remain silent "unless he chooses to speak in an unfettered exercise of his own will" then no violation of the Fifth Amendment occurs. This case involved an action by the State of New York to establish that the child suffered abuse and/or neglect at the hands of the child's mother and her live-in boyfriend. The court held that these proceedings failed to

infringe upon his Fifth Amendment rights even though testimony at the proceeding could be used for criminal child abuse charges. The court felt no compulsion occurred.

> "This is not a situation where a failure to testify will cause a penalty to be exacted. See Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). Rather, as in a criminal case, the decision to testify or not in the presentation of a defense remains in the unfettered discretion of the Respondent. The decision is a tactical, not a compelled one. A defense to the allegations may be established by alternative methods which do not require the Respondent's testimony." 405 N.Y.S.2d at 904.

We find in the instant case, that appellant suffered no compulsion to testify, therefore no violation of the Fifth Amendment occurred. Appellant clearly could remain silent if he so desired without fear of certain penalty for not testifying. Appellant's determination to testify hinged upon a tactical decision and not penalty of certain loss of parental rights, as he asserted. We therefore hold that the court acted properly in not staying the proceedings until appellant's criminal proceedings were terminated.

We affirm the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

-8-

_Jack B. Morrison_

_R.C. Featherstone_

_____

Justices

Mr. Justice Fred J. Weber specially concurs as follows:

I concur in affirming the District Court's order terminating the parental rights of William R. Sigler. At first reading, section 41-3-609(1)(c)(i), MCA appears to require a finding that an appropriate treatment plan had not been complied with by William R. Sigler before the court had the authority to order a termination of the parent-child legal relationship. I have concluded that the Parent-Child Legal Relationship Termination Act of 1981, sections 41-3-601 to -612, MCA, does not require that conclusion.

In this case the District Court made a careful study and review of the facts and the law. In addition to the portion of section 41-3-609(1), MCA which is quoted in the majority opinion, the District Court also specifically considered the remaining portion of that section which in pertinent part states:

> "(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:
>
> "(a) emotional illness, mental illness . . . of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child . . . ."
>
> "(b) a history of violent behavior by the parent;
>
> . . .
>
> "(e) present judicially-ordered long-term confinement of the parent;
>
> "(f) the injury or death of a sibling due to proven parental abuse or neglect;
>
> . . .
>
> "(3) In considering any of the factors in subsection (2) in terminating the parent-child

relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child . . ."

The District Court concluded as follows:

"The findings of fact in this case clearly establish that the conduct and condition of respondent Sigler rendering him unfit is unlikely to change within a reasonable time. He has a history of violent behavior; he is under a long-term confinement (60 years); and he caused the death of the child's brother by beatings and abuse."

With regard to the treatment plan itself on the part of respondent Sigler, the District Court stated:

"There is absolutely no sense in putting Russell Sigler into a training program when the chances for success are miniscule and the costs of failure are so high. Respondent's actions have caused the foreclosure of his right to assert any interest in this child. A parent does not have the privilege of inflicting brutal treatment upon his or her child before the child may obtain the protection of the State. Matter of T.Y.K., 598 P.2d 593, 595 (Mont. 1979); In re Miller, 242 P.2d 1060 (Wash. 1952)."

As appears from the quoted findings in the majority opinion, the District Court did enter sufficient findings showing that continuation of the parent-child relationship would likely result in continued abuse or neglect and that the condition of the respondent renders him unfit and unable to give the child adequate parental care. In reaching this conclusion, the court properly considered the requirements of section 41-3-609(2) & (3), MCA.

In substance, section 41-3-609(1)(c)(i), MCA authorized the court to terminate the parent-child legal relationship when the parents have failed to comply with an appropriate plan which has been approved by the District Court. In this instance the District Court had specifically found that the condition of respondent Sigler was such that the District Court cannot and could not approve a treatment plan as appropriate for Sigler. Our question then becomes whether,

11

where no treatment plan is appropriate under the facts of the case, the court still must order some type of a treatment plan in order to meet a technical requirement of the statute.

Here the District Court made findings of fact pursuant to the statutes and reached the conclusion that Sigler's condition was such that the court could not approve any treatment plan appropriate for him. At that point, I believe the initial test under subsection (i) of 41-3-609(1)(c), MCA had been met. The District Court further concluded that the conduct or condition rendering Sigler unfit is unlikely to change within a reasonable time, thereby satisfying subsection (ii) of 41-3-609(1)(c), MCA.

I conclude that the statutory tests have been met so that the District Court had the power to order the termination of the parent-child legal relationship without the technical step of first requiring a treatment plan for and compliance by Sigler. This gives particular meaning to the latter portion of the statute which states, "The court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child."

It is essential that we weigh very carefully all of the facts and the law before terminating a parent's rights as was done in this case. The statutory requirements which meet these standards were carefully considered and followed by the District Court. I therefore join in affirming that Court.

Justice

12

Mr. Justice Daniel J. Shea, dissenting:

The statute, section 41-3-609(1), MCA, is clear, and it is mandatory. A "treatment plan" must be submitted for the defendant in this circumstance, and absent this treatment plan, and a failure to comply with the treatment plan, the defendant's parental rights could not be terminated.

Here the State has failed to submit any treatment plan, and yet this Court has sanctioned the termination of parental rights. That this Court has the power to ignore this mandatory statute is evidenced by the majority opinion in this case. But whether this Court has the properly constituted legal authority to ignore mandatory statutes, is yet another question, and one not answered by the majority opinion. The Court's perceived expediency problem, caused by the nonmandatory 60-year prison sentence, should not be the legal basis for ignoring a mandatory statutory requirement aimed at fortifying parental rights.

Defendant has been victimized by the judiciary. The 60-year sentence imposed, although lawful, was not mandated by statute. The trial court could have given a shorter sentence to defendant. But because the trial court chose, in its infinite discretion, to impose a long sentence, I fail to see how a trial court could then use that discretionary act as the basis for its decision to ignore the statute requiring the State to set up a treatment plan for the defendant. Yet that is precisely what the trial court has done and that is precisely what the majority opinion has approved.

Defendant has been deprived of his parental rights because he did not plea bargain with the State, and now must

face the consequences of that failure--a 60-year prison sentence.

By contrast, a codefendant in the criminal case, and the mother of the child involved in this case, secured her chances for a continuing parental relationship by plea bargaining with the State to testify against the defendant. In helping secure the defendant's conviction, the mother, although she did not receive the precise plea bargain that the State had agreed on (see State v. Wilkinson (Mont. 1984), 679 P.2d 767, 41 St.Rep. 456), by the light sentence received, secured her rights to maintain her parental relationship with the child. The mother served only a few months in prison, is now on parole, and the State, of course, submitted a "treatment plan" for the mother which permits her to maintain her parental relationship.

I would reverse the trial court's decision and hold as section 41-3-609(1), MCA, requires, that a treatment plan must be provided for the defendant. Neither the District Court nor this Court has the right to deprive defendant of his parental rights before a treatment plan has even been submitted and adopted.

_____
Justice

- 14 -