No. 88-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN THE MATTER OF INQUIRY INTO:

BABY BOY SCOTT,
Youth in Need of Care.

---

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

W. M. Hennessey, Butte, Montana

For Respondent:

Ross Richardson, Butte, Montana
Patrick McGee, Butte, Montana

---

Submitted on Briefs:   Nov. 17, 1988

Decided:   December 29, 1988

Filed:

FILED
'88 DEC 29 AM 11 38
MONTANA SUPREME COURT

*Edel M. Harrison*
_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The natural mother of Baby Boy Scott appeals an order of the Second Judicial District Court, Silver Bow County, terminating her parental rights. We affirm.

The issues raised are as follows:

1. Did the District Court err in terminating the mother's parental rights without establishing a court-approved treatment plan?

2. Did the District Court err in refusing to grant the mother visitation rights with the child after her parental rights were terminated?

Baby Boy Scott was born on October 28, 1986. At the time of his birth, the mother was a patient at Warm Springs State Hospital. Her admission to Warm Springs in August, 1986 was her third. She had also been a frequent patient at Billings Deaconess Hospital Psychiatric Unit.

Shortly after the child's birth, the Butte-Silver Bow County Office of Human Services, a division of the Montana Department of Social and Rehabilitative Services (SRS), obtained an order for temporary investigative authority and protective services. The child was placed with a foster home in Butte.

On January 14, 1987, the District Court terminated the rights of the putative father and extended the October protective order. The child was moved to a pre-adoptive home where he resided at the time of the hearing that is the subject of this appeal.

The mother was released from Warm Springs in February, 1987. She was readmitted in August, 1987 and was released again in late December, 1987. She has never seen the child.

On March 30, 1988, the mother filed a motion to dismiss the temporary order of January, 1987, on the grounds that she was no longer incapacitated and was residing at home in Billings where she had family support. She additionally based her motion on the fact that the case had been inactive for over one year. In response, SRS filed a petition for permanent legal custody and termination of parental rights. After a hearing on April 27, 1988, the District Court issued an order denying the mother's motion to dismiss and granting SRS's petition. The mother filed this appeal.

The mother first argues that the District Court improperly terminated her parental rights. She maintains that, when a treatment plan has never been established by a district court, the court may not terminate parental rights unless SRS makes a showing that clearly proves the impossibility of a workable plan.

This Court established the "clear impossibility" standard referred to by the mother in In Re C.L.R. (1984), 211 Mont. 381, 386, 685 P.2d 926, 928. At the time of our decision in that case, the pertinent statute provided that a parent's rights could not be extinguished without a finding that the parent had not complied with a court-approved treatment plan or that such a plan has been unsuccessful. Section 41-3-609(1)(c)(i), MCA (1981).

After C.L.R., the legislature amended the statute, adding exceptions to the treatment plan requirement. The exceptions abrogate the need for the court-made clear impossibility standard with regard to parents who suffer from mental disease. The statute now makes it possible to extinguish the parental rights of a mentally ill individual without establishing a court-approved treatment plan as long as two medical doctors testify that the individual is so severely mentally ill that he or she cannot assume the role

3

of parent. Section 41-3-609(4)(a), MCA. The doctors must also testify that the mental condition of the parent is unlikely to change within a reasonable time. Section 41-3-609(1)(c)(ii).

In the instant case, three psychiatrists testified that the mother suffered from chronic schizophrenia. All agreed that, considering her history of mental illness, there was little hope that she would be able to assume her parental role. They concurred that her condition was unlikely to change within a reasonable time.

We note that one of the doctors had not had contact with the mother for over one year. The other two psychiatrists had evaluated her within four months of the hearing. The testimony of these latter two doctors sufficed to establish the statutory basis for terminating the mother's rights.

In addition to the testimony of the medical doctors, the residential clinical coordinator at the Mental Health Center in Billings testified that he had counselled the mother during the past five years. He agreed with the doctors that her prognosis was not good.

We will not overturn a district court order terminating parental rights as long as the findings of fact are supported by substantial credible evidence and the conclusions of law do not amount to a clear abuse of discretion. In Re V.B. (Mont. 1987), 744 P.2d 1248, 1249, 44 St.Rep. 1838, 1840. In light of the above facts, substantial credible evidence exists to support the District Court findings that the mother was so severely mentally ill that she could not assume the role of parent and that her condition was unlikely to change within a reasonable time. The District Court did not abuse its discretion by terminating the mother's parental rights.

The mother next argues that the District Court erred by failing to grant her request for visitation rights with the child. She maintains that visitation should have been allowed because there is nothing in the record that demonstrates that such an arrangement would be harmful to the child.

Although we have expressly disapproved the practice of allowing visitation "rights" once parental rights have been extinguished, In Re C.P. (Mont. 1986), 717 P.2d 1093, 1095, 43 St.Rep. 728, 731, we have allowed a natural mother to maintain "contact" with her child at the discretion of the SRS. V.B., 744 P.2d at 1250, 44 St.Rep. at 1841-42. Contact is permissible only upon a showing that such an arrangement is in the child's best interest. V.B., 744 P.2d at 1250, 44 St. Rep. at 1841.

In the present case, even though the mother requested visitation rights, the District Court could properly have considered her request as one for discretionary contact had there been evidence showing that such a plan would be beneficial to the child. However, no such showing was made. The mother failed to elicit testimony from any of the witnesses regarding the effect contact would have on the child. Furthermore, the record as it stands clearly demonstrates that it would not be in the child's best interest to allow the mother to maintain contact with him. The District Court did not abuse its discretion by failing to allow such an arrangement.

The mother also argues that the District Court erred in denying her motion to dismiss for failure to prosecute. The decision to grant such a motion is within the discretion of a district court. Cremer v. Braaten (1968), 151 Mont. 18, 19-20, 438 P.2d 553, 554. The mother has made no showing

5

that the District Court abused its discretion by denying her motion to dismiss.

We affirm the District Court.

_William E. Hunt_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John C. Sheehy_

_R. C. McDonough_

_L. C. Gulbrandson_
Justices