No. 98-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 131

294 Mont. 494

982 P.2d 1011

IN THE MATTER OF J.F. and C.F.,

Youths in Need of Care.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Deer Lodge,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael D. McLean; Knight, Dahood, McLean & Everett,

Anaconda, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Carol Schmidt, Ass't

Attorney General, Helena, Montana

Michael B. Grayson, Deer Lodge County Attorney; Joan S. Gonzales,

Deputy Deer Lodge County Attorney, Deer Lodge, Montana

Attorney for Youths:

Sherry P. Staedler, Attorney at Law, Anaconda, Montana

Submitted on Briefs: March 25, 1999

Decided: June 14, 1999

Filed:

No

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Robert Ford (Ford) appeals from the order of the Third Judicial District Court, Deer Lodge County, terminating his parental rights with regard to his two minor children, J.F. and C.F., and awarding permanent legal custody with the right to consent to adoption to the Department of Public Health and Human Services (DPHHS).**

**¶2. We reverse and remand for further proceedings.**

**¶3. We address the following issue:**

**¶4. Whether the District Court erred in finding that a treatment plan was impractical.**

### Standard of Review

**¶5. In reviewing a district court's decision to terminate parental rights, we determine whether the court interpreted the law correctly and whether its findings of fact are clearly erroneous. In re E.W., 1998 MT 135, ¶ 9, 289 Mont. 190, ¶ 9, 959 P.2d 951, ¶ 9 (citation omitted). In termination of parental rights cases that involve youths in need of care, we review purely factual findings under the clearly erroneous standard set forth in Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. *In re E.W.*, ¶ 10. Because a natural parent's right to the custody and care of a child is a fundamental liberty interest, we determine whether a district court has adequately addressed each applicable statutory requirement before terminating an**

individual's parental rights. *See* Matter of R.B. (1985), 217 Mont. 99, 103, 703 P.2d 846, 848 (citation omitted). Finally, we presume that a district court's decision is correct and we will not disturb it on appeal unless the court has made a mistake of law or a finding of fact that is not supported by substantial evidence "that would amount to a clear abuse of discretion." *In re E.W.*, ¶14 (citations omitted).

## Factual and Procedural Background

¶6. In June, 1997 Ford was arrested on federal gun charges; he was eventually sentenced to twenty months in federal custody with credit for time served and placement at a federal facility in Rochester, Minnesota because of his AIDS-related physical impairments. The day after Ford's arrest, DPHHS removed his children from his home and placed them in foster care. DPHHS investigated the Ford home and the condition of the children, J.F. and C.F., who at the time of their removal were one and one-half years and eight months old, respectively, and petitioned the District Court for temporary investigative authority and protective services for J.F. and C.F.

¶7. A show-cause hearing was held late in June, 1997. The District Court granted the petition for temporary investigative authority, finding that the children were abused, neglected or dependent or in danger of becoming abused, neglected or dependent. In September, 1997 DPHHS petitioned the District Court for temporary legal custody of J.F. and C.F. Sheryl Driver (Driver), a social worker with DPHHS, requested that the District Court waive a treatment plan for Ford because of his "unstable" health and the length of his incarceration, which Driver said would limit his available parenting time with his children. In October, 1997 the District Court granted temporary custody of the children to DPHHS for six months, waiving a treatment plan for Ford but ordering a plan for his wife, Lahoma. In December, 1997 Lahoma Ford waived her parental rights to J.F. and C.F., and her parental rights were subsequently terminated. In April, 1998 DPHHS petitioned the District Court for permanent legal custody of J.F. and C.F. and termination of Ford's parental rights.

¶8. A termination hearing was held in June, 1998. Ford participated in the hearing by telephone. In its findings of fact, conclusions of law and order, the District Court concluded that J.F. and C.F. were Youths in Need of Care under § 41-3-102, MCA. The District Court further concluded that it had properly waived the treatment plan for Ford pursuant to § 41-3-609(4)(b), MCA. The District Court found that a

treatment plan was not practical "considering the length of [Ford's] incarceration, his lack of interest in cooperating with the Department, and the distance between Anaconda, MT and Rochester, Minnesota." The District Court noted that Ford had refused to release information regarding his medical condition. The District Court terminated Ford's parental relationship with J.F. and C.F. and awarded permanent legal custody of the children, with the right to consent to adoption, to DPHHS.

## Discussion

¶9. Ford contends that the District Court erred in finding that a treatment plan was impractical. Ford argues that DPHHS never discussed the implementation of a treatment plan with him. Citing Matter of W.Z. (1997), 285 Mont. 16, 946 P.2d 125 and Matter of C.L.R. (1984), 211 Mont. 381, 685 P.2d 926, Ford argues that this Court has warned that implementation plans must be attempted before they are dismissed as impractical. Therefore, DPHHS should have discussed the possible implementation of a treatment plan with Ford.

¶10. The State responds that the District Court did not err in finding that a treatment plan was impractical and that "impractical" under § 41-3-609(4)(b), MCA, does not mean that a treatment plan is "impossible" but rather that it is not wise. The State argues that a treatment plan for Ford was impractical because of the distance between J.F. and C.F. and the Rochester medical facility where Ford was held, his refusal to cooperate with DPHHS, in particular his refusal to release his medical records, and his children's need for stability and permanency. The State argues further that *Matter of W.Z.* does not apply in the present case because in *Matter of W.Z.* DPHHS apparently did not attempt to create or implement a treatment plan, whereas Ford refused to cooperate and allow an implementation plan to proceed.

¶11. Section 41-3-609, MCA, sets forth the criteria for termination of parental rights:

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:

. . .

(e) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time[.]

Section 41-3-609, MCA. However, § 41-3-609, MCA, provides an exception to the requirement of a treatment plan:

(4)  A treatment plan is not required under this part upon a finding by the court following hearing if:

. . .

(b) the parent is incarcerated for more than 1 year and a treatment plan is not practical considering the incarceration[.]

Section 41-3-609(4) and (4)(b), MCA.

**¶12. In the present case, the District Court terminated Ford's parental rights after finding that Ford had refused to cooperate with DPHHS. The District Court specifically found that when a social worker contacted Ford at the Rochester medical facility, Ford "refused to release information concerning his medical conditions, namely H.I.V., 2nd stage, and tuberculosis." Thus, Ford's refusal to disclose his medical records played an important role in the District Court's determination that a treatment plan was impractical.**

**¶13. Although the record establishes that Driver asked Ford to release his medical records, the record also shows that Driver neither told Ford that he had to release his medical records in order to participate in a treatment plan nor discussed with him the possibility of implementing a treatment plan. Further, the record establishes that but for Ford's refusal to release his medical records, DPHHS was prepared to explore the feasibility of a treatment plan. At the June, 1998 hearing, Driver was asked about her contact with Ford:**

Q. Did you ever discuss the implementation of a treatment plan with Robert Ford?

A. I never had the chance to do that because I didn't have any evaluations.

Q. So you didn't discuss it with him, did you?

A. It was not appropriate.

Q. Nobody from the Department of Public Health and Human Services ever discussed with Robert Ford the implementation of a parenting plan, did they?

A. A treatment plan, no there was never any discussion with it because we had no evaluations to write one from.

Driver did not testify that she told Ford that there could be no evaluation or treatment plan unless he released his medical records.

**¶14. In *Matter of W.Z.*, a treatment plan was also never discussed. The Court in *Matter of W.Z.* determined that "[i]t is apparent from the record that neither DFS nor the social worker involved in the case ever presented the father with a proposed treatment plan, *or even discussed with him the possibility of implementing one*." *Matter of W.Z.*, 285 Mont. at 29, 946 P.2d at 133 (emphasis added). The Court concluded that the district court erred in finding that a treatment plan was impractical.**

**¶15. In light of our decision in *Matter of W.Z.*, we hold that the impracticality provision of § 41-3-609(4)(b), MCA, requires at a minimum that DPHHS discuss the possibility of implementing a treatment plan with a parent. Thus, a parent's lack of cooperation in disclosing information is not a sufficient ground by itself to conclude that a treatment plan is impractical unless the parent has been clearly informed that his or her cooperation is necessary. We have previously recognized that a natural parent's "right to care and custody of a child is a fundamental liberty interest, *which***

*must be protected by fundamentally fair procedures*." *Matter of R.B.*, 217 Mont. at 103, 703 P.2d at 848 (emphasis added).

**¶16. Because no one discussed with Ford the possibility of implementing a treatment plan or advised him that his cooperation was necessary for him to participate in a plan, we hold that the District Court erred in finding that a treatment plan was impractical. The order of the District Court terminating Ford's parental rights is therefore reversed and this case is remanded for further proceedings consistent with this opinion.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

Chief Justice J. A. Turnage dissenting.

¶17 In reversing the District Court's finding that a treatment plan for Ford was impractical, the Court relies on *Matter of W.Z.* (1997), 285 Mont. 16, 946 P.2d 125, in which we held that "the Court will not permit the termination of parental rights without first establishing a treatment plan unless a showing of facts clearly proves the impossibility of any workable plan." Because I believe the facts in this case are distinguishable from those presented in *Matter of W.Z.*, I respectfully dissent.

¶18 Unlike the social worker in *W.Z.*, the social worker in this case did contact Ford to

request the release of his medical records so that evaluations and recommendations could be performed from which a treatment plan could be formulated. Ford, however, remained consistent in his refusal to cooperate with DPHHS and declined to release his medical records, leaving DPHHS with no resources from which to generate a treatment plan suited to Ford's particular needs. Moreover, the Court's conclusion that "Ford's refusal to disclose his medical records played an important role in the District Court's determination that a treatment plan was impractical" overlooks additional facts which distinguish this case from *Matter of W.Z.*

¶19 For instance, in its Findings of Fact, Conclusions of Law and Order, the District Court noted that Ford's incarceration was at a considerable distance from the location of his children in Montana. Once a treatment plan has been implemented and it appears that the plan will be successful, a process of reunification is required in which visitations between parent and child are slowly increased over a period of time. In Ford's case, execution of the reunification process was made impractical by the financial and logistical difficulties of transporting Ford's children to Minnesota on an increasingly regular basis.

¶20 Reunification was further hampered by Ford's incarceration because of the length of separation it had already caused between Ford and his family. By the time reunification could reasonably occur, the children would have been out of the home longer than they ever lived in the home. This would have made reestablishing the relationships between parent and child more difficult and would have required a longer period of reunification before the children could again be placed with Ford.

¶21 Ford's incarceration in Minnesota also made a treatment plan impractical insofar as DPHHS was limited in its ability to monitor his attendance at the programs recommended for him and to perform periodic evaluations of the success of the treatment plan. Additionally, the record in this case shows that any treatment plan designed for Ford would have required the performance of a number of tasks, such as establishing a home for the children and demonstrating an ability to manage the daily care of the children and provide for their welfare. Ford's own testimony at the hearing indicated that the completion of some or all of these tasks would have been rendered impractical during the term of his incarceration.

¶22 Because I believe there is substantial credible evidence in the record to support the findings of the District Court, I would hold that the District Court did not err in waiving the implementation of a treatment plan and terminating Ford's parental rights in J.F. and C.

F.

/S/ J. A. TURNAGE

Justice Karla M. Gray and Justice Jim Regnier dissenting.

¶23 We concur in the foregoing dissent of Chief Justice Turnage.

/S/ JIM REGNIER

/S/ KARLA M. GRAY