DA 13-0206

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 361N

IN THE  MATTER OF:

K.G., K.G., and K.G.,

Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADN 12-59
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Kathryn McEnery, McEnery Law Office, PLLCA; Kalispell, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General; Helena, Montana

John Parker, Cascade County Attorney, Jennifer L. Quick, Deputy Cascade
County Attorney; Great Falls, Montana

Submitted on Briefs:  November 13, 2013
Decided:  December 3, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     D.G., the Birth Father, appeals from the Order of Montana Eighth Judicial District Court, Cascade County, terminating his parental rights to his children, K.G.1, K.G.2, and K.G.3 (collectively, the Children). We affirm.

¶3     On July 26, 2011, the Birth Mother called Benefis Hospital in Great Falls with concerns about K.G.2. At the time, K.G.2 was two months old. K.G.2 has Down Syndrome, as well as medical conditions that require her to have a colostomy bag and a feeding tube. When the Birth Mother brought K.G.2 in to be examined, the examining physician found that she had bruising on her chin consistent with someone grabbing the chin with the thumb and point finger and holding hard. She had "significant" circular-shaped burns on her abdomen and right upper shoulder extremity that had scabbed over. X-rays revealed that she had four broken ribs on her left side and a broken left femur. Her injuries caused severe respiratory failure and she had to be transferred from the Benefis Hospital to Salt Lake City. In the expert opinion of the Great Falls examining physician, Dr. Gerrity, it was lucky to get K.G.2 to Salt Lake City alive.

¶4     D.G. eventually confessed to having caused most of the injuries and pled guilty to assault on a minor. He was sentenced to the Department of Corrections for ten years, with five suspended.

¶5 K.G.1 and K.G.2 were removed from their parents' care and adjudicated Youths in Need of Care (YINC) on November 10, 2011. At that time, D.G. testified, he believed that if he did a "boot camp" his parental rights would not be terminated; and that the Department of Public Health and Human Services (the Department) planned to set in place a treatment plan for him. D.G. completed boot camp, anger management classes, parenting classes and a substance abuse course in connection with his sentence.

¶6 The court granted Temporary Legal Custody (TLC) of K.G.1 and K.G.2 to the Department on December 8, 2011. K.G.3 was born in 2012. K.G.3 was adjudicated a YINC almost immediately and the court granted the Department TLC in July, 2012. The State petitioned for termination of parental rights of both parents and for permanent legal custody, as to all three Children.

¶7 The District Court held a hearing on the matter on December 7, 2012. At that hearing, the State requested that D.G.'s rights be terminated pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(c), MCA. Section 41-3-609(1), MCA, provides, in pertinent part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence . . . that *any of the following circumstances exist*: . . .
>> (d) the parent has subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e).

Section 41-3-609(1)(d), MCA (emphasis added). Section 41-3-423(2), MCA, provides, in pertinent part:

> [T]he department may, *at any time* during an abuse and neglect proceeding, make a request for a determination that preservation or reunification services need not be provided . . . A court may make a finding that the department need not make reasonable efforts to provide preservation or reunification services if the court finds that the parent has: . . .

3

(c) committed aggravated assault against a child[.]

Section 41-3-423(2), MCA (emphasis added). D.G.'s attorney moved to prevent the State from proceeding on this theory. D.G.'s attorney also made motions with regards to ineffective assistance of counsel (IAC); and with regards to the State's burden of proof. The court denied D.G.'s motions. The District Court ordered termination of D.G.'s parental rights and extension of TLC, pending a second hearing on the State's petition to terminate the parental rights of the Birth Mother.

¶8 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion. *In re T.S.*, 2013 MT 274, ¶ 21, 372 Mont. 79, 310 P.3d 538. We will not disturb a district court's decision on appeal unless "there is a mistake of law or a finding of fact not supported by substantial evidence[.]" *In re T.S.*, ¶ 21. We review discretionary trial court rulings, including trial administration issues and evidentiary rulings, for abuse of discretion. *In re G.M.*, 2009 MT 59, ¶ 11, 349 Mont. 320, 203 P.3d 818. We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re T.S.*, ¶ 21 (citing *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174).

¶9 Although a parent's right to the care and custody of a child is a fundamental liberty interest, and must be protected by fundamentally fair procedures, the best interests of the children take precedence over the parental rights. *See In re T.S.B.*, 2008 MT 23, ¶¶ 18-19, 341 Mont. 204, 177 P.3d 429.

¶10 On appeal, D.G. argues that the District Court's decision rested on the finding that continuing the legal parent-child relationship would result in "an ongoing risk of abuse

4

and/or neglect" and that this finding incorporated an (erroneous) finding that the conduct or condition rendering D.G. unfit was unlikely to change within a reasonable time. D.G. further argues that the District Court abused its discretion in terminating his parental rights because the State did not adhere to the proper statutory procedures: The State's petition never asked the District Court for a determination that no treatment plan was required for D.G., or for a determination that no reasonable efforts at reunification were required. Finally, D.G. argues that the District Court erred by denying his motions at the termination hearing.

¶11     The District Court expressly stated twice in its Order that it was terminating D.G.'s parental rights pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(c), MCA. These sections do not require a court to weigh the potential that a parent's fitness might change. In the statutory context for the District Court's decision, the court's finding regarding the risk of abuse and neglect to D.G.'s children serves primarily to illustrate that extending D.G.'s parental rights was not in the best interest of his children. The District Court did not err in making this finding; substantial evidence supported the court's determination, in light of the severity of the abuse D.G. perpetrated against K.G.2.

¶12     D.G.'s second argument boils down to a question about when and how the determinations that reasonable efforts at reunification and a treatment plan are not required should occur. "[T]he rules of statutory construction require the language of a statute to be construed according to its plain meaning." *Haux v. Mont. Rail Link, Inc.*, 2004 MT 233, ¶ 12, 322 Mont. 456, 97 P.3d 540. "Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA. The Department's request that the District Court terminate D.G.'s parental rights pursuant to

5

§§ 41-3-609(1)(d) and 41-3-423(2)(c), MCA, was sufficient to comply with the procedural requirements governing termination without efforts at reunification. Section 41-3-423(2), MCA, provides that the Department may seek a determination that reunification is not required "at any time." Section 41-3-423(2), MCA. The Department stated twice in its petition that it was proceeding under the aggravated circumstances provisions of the termination statute. It was clear to the District Court at the termination hearing that the State was requesting a determination that it did not need to make efforts at reunification. As a result, in its Order, the District Court concluded pursuant to § 41-3-423(2)(c), MCA, that the Department was not required to make efforts at reunification. The Department's statement in its petition that it intended to proceed under the aggravated circumstances statutes effectively sought a determination from the court that efforts at reunification were not required. The District Court's conclusion that efforts at reunification were not required was legally correct and complied with the statute.

¶13    D.G.'s argument with regards to the treatment plan fails because, under these circumstances, no treatment plan was required. Section 41-3-609(4)(a), MCA, provides that no treatment plan is required if the court finds, following a hearing, that the parent meets certain conditions, including having committed aggravated assault on a child. D.G. argues that termination without a treatment plan should only occur when a workable treatment plan is "impossible" and directs our attention to *In re C.L.R.*, 211 Mont. 381, 386, 685 P.2d 926, 929 (1984). In *In re C.L.R.*, this Court held that, where the parent challenging termination of his parental rights had been convicted of deliberate homicide for fatally abusing his child's sibling, the facts proved the impossibility of a workable treatment plan. *In re C.L.R.*, 211

6

Mont. at 386, 685 P.2d at 929. But for the heroic efforts to save K.G.2's life by transporting her to a treatment facility in Salt Lake City, the facts of this case would bear a striking similarity to those in *In re C.L.R.* The District Court would not have abused its discretion under an impossibility standard. As we explained in *In re Inquiry of Baby Boy Scott*, 235 Mont. 253, 255, 767 P.2d 298, 299 (1988), however, the Legislature changed the statutory framework on which we relied in *C.L.R.* to create some exceptions to the requirement that a treatment plan be imposed prior to termination. One of these is the exception at issue here, where the parent has committed aggravated assault on a child. Section 41-3-609(4)(a), MCA. The argument that the State was required to ask the court for a determination that a treatment plan was not required must fail, because this case falls within the circumstances set forth in § 41-3-609(4)(a), MCA.[1] The District Court's finding that D.G. committed aggravated assault against a child after the termination hearing, was sufficient to invoke § 41-3-609(4)(a), MCA's, exception to the treatment plan requirement. Because the District

---

[1] *In re Inquiry of Baby Boy Scott* concerned termination proceedings under the statutory provisions allowing termination without a treatment plan in cases where a parent's mental illness renders the parent unable to assume the role of a parent within a reasonable time. *In re Inquiry of Baby Boy Scott*, 235 Mont. at 255, 767 P.2d at 299. In that context, our decision required that the testimony establishing the parent's inability to assume the role of a parent also establish that the parent's condition was unlikely to change within a reasonable time. *In re C.R.O.*, 2002 MT 50, ¶ 7, 309 Mont. 48, 43 P.3d 913. In recognition of that requirement, the 2003 Legislature revised § 41-3-609(4)(b), MCA, to provide: "A treatment plan is not required under this part upon a finding by the court following hearing if: . . . (b) two medical doctors or clinical psychologists submit testimony that the parent cannot assume the role of parent *within a reasonable time*." (Emphasis added). The "reasonable time" condition does not apply where a treatment plan is not required pursuant to § 41-3-609(4)(a), MCA. To read the statute to require finding a parent's conduct or condition unlikely to change within a reasonable time, where the criteria set forth in §§ 41-3-609(1)(a)-(e), MCA, are met, would lead to an absurd result.

Court concluded, following the termination hearing, that D.G. had committed aggravated assault on a child, the statute did not require a treatment plan to be set in place.

¶14 Nor did the District Court abuse its discretion in denying D.G.'s motions at the termination hearing. The record supports the District Court's conclusion that D.G. had been put on notice consistently from the inception of the case that the State intended to file for termination on the grounds that he assaulted his child.[2] Although D.G.'s counsel showed an admirable willingness to "throw himself under the bus" for his client, his motion at the hearing did not show that D.G. had suffered from ineffective assistance of counsel. The District Court did not abuse its discretion in denying that motion. Finally, the District Court did not abuse its discretion in denying D.G.'s motion regarding the State's burden of proof because the grounds for the motion incorporated standards from a section of the statute upon which the District Court's decision did not rely. D.G. provides no authority supporting his arguments that the District Court improperly denied these motions; and we are not persuaded that the District Court abused its discretion in doing so.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are controlled by the statutes and precedent. The District Court did not abuse its discretion in terminating D.G.'s parental rights under the aggravated assault provisions of the

---

[2] For instance, the order dated April 16, 2012 provided that the State planned to terminate the father's parental rights based on his conviction for assaulting K.G.2. In the State's petition to extend TLC, dated June 15, 2012, the State also announced that it planned to terminate D.G.'s rights under the theory of aggravated circumstances. In a hearing held on October 25, 2012, the State again stated it planned to terminate D.G.'s parental rights.

termination statute. Although we recognize D.G.'s efforts at rehabilitation, we agree with the District Court that it is not in the Children's best interest to continue this parent-child relationship.

¶16 Affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE