No. 87-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN THE MATTER OF DECLARING
V.B., T.B., D.B. and B.B.,
Youths in Need of Care.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

O'Brien & Conrad; Barbara J. Conrad, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, III, County Attorney, Missoula,
Montana
Margaret Borg, Missoula, Montana
Bruce M. Wilson, Missoula, Montana

_____

Submitted on Briefs: Aug. 13, 1987

Decided: November 5, 1987

Filed: NOV 5 - 1987

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

W. B. appeals a February 18, 1987, order of the Fourth Judicial District, Missoula County. The order terminated her parental rights but allowed contact with the children if the Department of Social and Rehabilitation Services (SRS) determines that such contact is in the children's best interests. We affirm.

Appellant W. B. presents a single issue for our review: Did the District Court abuse its discretion in terminating parental rights while simultaneously maintaining the possibility of parental contact?

W. B. is the natural mother of four children, ranging in age from six to twelve. She has been diagnosed as having a borderline personality disorder with marked shifts in moods and behavior. She also suffers from a seizure disorder with secondary psychosis. Prior to 1984, she was admitted to Warm Springs State Hospital eleven times.

From 1984 to 1986, W. B. was admitted seven times to the mental health unit of St. Patrick's Hospital in Missoula. SRS placed her children in foster care six times due to W. B.'s chronic mental and emotional problems. During this time, the children were in their mother's care for a total of three months.

On May 27, 1986, the Missoula County Attorney filed a petition on behalf of SRS for temporary legal custody of the children. On June 16, 1986, W. B. stipulated to a court order which found that the children were neglected within the meaning of § 41-3-102(2), MCA. The statute provides:

> An "abused or neglected child" means a
> child whose normal physical or mental
> health or welfare is harmed or

> threatened with harm by the acts or
> omissions of his parent or other person
> responsible for his welfare.

The father of the children also stipulated to the order, and agreed to participate in a separate treatment plan. The court granted temporary legal custody of the children to SRS.

In the same order, the District Court approved a treatment plan for W. B. under which SRS would gradually return the children to W. B.'s physical care. The treatment plan failed within two months. W. B. was again hospitalized for her recurring mental problems. SRS again placed the children in foster homes. On September 12, 1986, the Missoula County Attorney filed a petition on behalf of SRS to terminate W. B.'s parental rights.

The District Court heard the matter on February 6, 1987. The court found that all of the children suffer from lack of appropriate affection, attention and emotional stability. In addition, the three oldest have learning disabilities. The court found that appellant's mental and emotional problems are too great for her to provide the structure and consistency the children require. Therefore, the court terminated the parent-child relationship.

However, the court also found that all of the children have a psychological attachment to their mother. The court stated:

> They would <u>benefit from contact with her</u>
> if it were regular and consistent, and
> if her behavior does not upset the
> children.
>
> . . .
>
> Child psychologists that have examined
> the children believe that it would be
> appropriate to allow visitation between
> [W. B.] and the children if it was in
> the best interests of the children.

3

> Such visitation should not be a right of
> [W. B.].  [Emphasis added.]

Based on these findings, the court then ordered:

> [W. B.] may contact the children, as
> restricted by SRS, when SRS determines
> that such contact is in the children's
> best interests.

> Before SRS consents to an adoption of
> any of the children, consideration
> should be given to whether the adoptive
> parents would voluntarily allow contact
> between [W. B.] and the adoptive child.
> [Emphasis added.]

The District Court also ordered that SRS would retain legal custody of the children pending a determination of the father's rights.

On appeal, W. B. does not request physical custody of the children.  However, she does contend that she should retain her visitation rights because the court found that some contact with the children might be beneficial to them. She argues that the order providing for limited contact conflicts with § 41-3-611(1), MCA, which states in pertinent part:

> An order for the termination of the
> parent-child relationship divests the
> child and the parents of all legal
> rights, powers, immunities, duties, and
> obligations with respect to each other
> . . . [Emphasis added.]

W. B. contends that the parent-child relationship in Montana is an "all-or-nothing principle." She argues that the only way for the court to act in her children's best interests is to not terminate the parent-child relationship and thus ensure her right to visitation. W. B. also asserts that substantial evidence does not support the court's finding that her lack of fitness would continue.

4

On review of this issue, we will not disturb the District Court's decision unless the findings of fact are not supported by substantial, credible evidence, or the conclusions of law amount to a clear abuse of discretion. Matter of C. P. (Mont. 1986), 717 P.2d 1093, 1095, 43 St.Rep. 728, 730.

In analyzing a custody issue, the best interests of the children are paramount. Matter of C.M.S. (1980), 187 Mont. 115, 123, 609 P.2d 240, 244. The record shows that W. B. cannot provide basic care, such as shelter and supervision, for her children because of her repeated hospitalization. W. B.'s behavior toward her children is erratic and volatile. The three psychologists who treated the children agreed that it would be in the children's best interests for W. B.'s legal rights to be terminated. One of the psychologists who observed W. B.'s interaction with her children testified: "I would like to emphasize that if we do not provide the stable environment for these children, that we can say that the three older children are going to be institutionalized and under the care of the State of Montana throughout their lifetime."

The District Coiurt made specific findings, in accordance with § 41-3-609(1)(c), MCA, on W. B.'s failed treatment plan and lack of fitness. The statute allows the District Court to order a termination of the parent-child legal relationship upon a finding that:

> (c) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

5

(ii) the conduct or condition of the
parents rendering them unfit is unlikely
to change within a reasonable time.

The District Court's findings were fully supported by the testimony and documents. We find that the District Court properly terminated W. B.'s parental rights.

Regarding visitation, we have often held that when parental rights are terminated, the natural parent no longer has _any_ rights over the child. This includes visitation rights. Matter of C. P., 717 P.2d at 1095; § 41-3-611(1), MCA. However, in W. B.'s case the same psychologists who advised that her parental rights be terminated also attested to the close relationship between W. B. and her children. The psychologists recommended some contact with the children under appropriate conditions.

Focusing on the children's best interests, the District Court had the delicate task of defining the scope of contact within a warm but erratic family relationship. The District Court carefully fashioned a conciliatory order which acknowledged both W. B.'s lack of fitness as a mother and the children's affection for her. The District Court distinguished contact from visitation. The court's order granted no right of visitation but simply allowed the possibility of contact conditioned upon SRS approval. In view of the respective ages of the children, 12, 11, 9 and 6, such an order is reasonable.

The court also limited SRS to mere consideration of contact in the event of the adoption of the children. Such consideration was further conditioned on the consent of the adoptive parents to any contact with W. B. This limitation accords with § 40-8-125(2), MCA, which states:

> After a final decree of adoption is
> entered, the natural parents . . . shall
> be relieved of all parental

6

> responsibilities for said child and have no rights over such adopted child or to his property by descent and distribution.

The restricted contact allowed by the court falls short of a visitation right. We find no inherent conflict within the findings of fact and conclusions of law. We caution, however, that when parental rights are terminated, continuing contact is allowable only in exceptional cases. In the event of an adoption, continuing contact cannot be court-ordered even with SRS approval.

We hold that the District Court acted within its discretion and in accordance with the custody statutes.

Affirmed.

_____
Chief Justice

_____
_____
_____
_____
_____
_____
Justices