No. 88-237

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

IN THE MATTER OF DECLARING
T.M.M., a Youth in Need of Care.

_____

APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable E. Gardner Brownlee, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           L. Charles Evans, Libby, Montana

       For Respondent:

           Mike Greely, Attorney General, Helena, Montana
           Betsy Brandborg, Asst. Atty. General, Helena
           Susan Loehn, County Attorney, Libby, Montana

_____

Submitted on Briefs:   Aug. 26, 1988

Decided:   October 13, 1988

FILED: '88 OCT 13 AM 10 22

CLERK
MONTANA SUPREME COURT

Filed:

_____
              Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The father of T.M.M. appeals from an order of the Nineteenth Judicial District, Lincoln County, terminating his parental rights to T.M.M. and granting the Lincoln County Office of Human Services (LCOHS) the authority to assent to adoption. We affirm.

Appellant raises the following issues on appeal:

1. Whether substantial credible evidence exists to support the District Court's determination that:

> a. the father failed to comply with the court authorized treatment plan;
>
> b. the conditions rendering the father unfit were unlikely to change within a reasonable period of time; and
>
> c. the Lincoln County Office of Human Services made reasonable efforts to rehabilitate the father.

2. Whether the court erred by failing to find that continuation of the parent-child legal relationship would likely result in continued abuse or neglect.

3. Whether the District Court erroneously denied the father's February 1, 1988 motion for a continuance.

4. Whether any manifest bias by the District Court judge deprived the father of his constitutional right to a fair trial.

T.M.M. is the youngest of four children born to R.M. (father) and N.M. (mother). T.M.M. was two and a half years of age when her parents separated in December of 1984; her parents divorced in June of 1985. She lived with her mother until May of 1985, when her mother left her in the custody of her father. Until December 6, 1985, she remained in the care

of her father and S.F., a moderately retarded woman unable to provide any parental care, but with whom the father began living in September of 1985. LCOHS placed all four children in protective foster care on December 6, 1985, after complaints of physical abuse by the boys and concerns about the neglect of T.M.M.; she did not have her own bed, she frequently wore and slept in the same clothes for days at a time, and she received care primarily from an older brother.

An initial treatment plan, agreed upon and signed by the father, was in effect from December 20, 1985 until February 20, 1986. This treatment plan, establishing minimum goals for the father to meet prior to the return of any of his children, was not successfully completed.

Additionally, an evaluation of T.M.M. conducted by pediatric psychologist Jacelyn Wedell-Monnig on April 17 and 18, 1986, revealed that T.M.M. suffered from Child Maltreatment Syndrome as a result of sexual abuse received at the hands of her father. T.M.M. stated that she often received a sucker after performing sexual acts with her father. Further, T.M.M. displayed inappropriate behavior in a child her age. She displayed an excessive interest in other children's bodies while fearing exposure of her own; she would stiffen her legs when her foster parents attempted to diaper her for the night. When playing with anatomically correct dolls, she spent an inordinate amount of time handling the male doll and placing the male doll on top of the female doll. She was observed repeatedly placing the male doll, which she called "Daddy doll," on the floor and then sitting on its penis. Given these clear indications of sexual abuse, Dr. Wedell-Monnig recommended that the father have no further contact with his daughter.

LCOHS filed a petition for temporary legal custody of all four children on May 12, 1986 because of lack of any progress by the father and because of evidence of the sexual abuse of T.M.M. The District Court granted temporary legal custody of all four children to LCOHS on July 18, 1986, following a hearing on June 2, 1986. The father subsequently was denied any visitation rights with T.M.M. The court also approved a new treatment plan for each parent. The treatment plan for the father required him to seek and complete a minimum of twelve counseling sessions with a therapist approved by LCOHS, to make and keep regular appointments with a social worker, to attend parenting classes, and to stop degrading his children's interest in their learning achievements.

Beverly Miller, a social worker assigned to the case, reported that the father failed to successfully complete this court approved treatment plan. He failed to obtain any counseling after the Lincoln County Mental Health Center (Center) refused him further counseling. Psychologist Dr. Miller stated that the Center denied the father further counseling because the previous nine years of family counseling were unproductive. The father also demonstrated no interest in working with LCOHS to effect any real changes, and he failed to keep in touch with a social worker following his move to Great Falls in the fall of 1987. Additionally, he continued to deny any responsibilty for the problems leading to the placement of his children in foster care, instead telling the boys during visitations that their foster care placement was their fault. This denial is consistent with psychological evaluations conducted by Dr. Meyers. Dr. Meyers diagnosed the father as suffering from an intermittent

4

explosive disorder, with other personality disorders, causing the father to deal with problems by repression and denial.

The failure of this court approved treatment plan led LCOHS, on February 23, 1987, to petition the court for temporary legal custody of all the children until age eighteen. A letter written by guardian ad litem Terrie Noser on April 7, 1987, stated that an award of custody to LCOHS would be in the best interests of the children. The father opposed the enrollment of T.M.M. in a preschool program despite an evaluation indicating that she had a speech and language deficiency. Her foster parents, however, enrolled her in a preschool program. Her preschool teacher, Sandra Honeychurch, observed a significant growth in T.M.M.'s "motor [skills], reasoning, visual perception and expressive language" as a result of the preschool program and her changed home environment. Consequently, on April 30, 1987, Judge Holter found that the best interests of the children, all adjudicated youths in need of care, necessitated awarding custody to LCOHS until age eighteen.

On December 2, 1987, LCOHS filed a petition for permanent legal custody and termination of parental rights to T.M.M., after having located a couple desiring to adopt her. The court scheduled a hearing on the motion for January 4, 1988. On that date, the father appeared without counsel, requesting the appointment of counsel. The court denied this request, ordered the father to hire an attorney within seven days, and then continued the hearing to January 18, 1988. The father again appeared without counsel on January 18, 1988, so the court appointed a public defender and continued the hearing to February 8, 1988, warning that no further continuances would be granted.

On January 21, 1988, the father moved for a continuance of the hearing until after he could be evaluated by a psychologist with the sexual offender program. Judge Brownlee denied this motion after a hearing on February 1, 1988. The February 8, 1988 termination hearing proceeded as scheduled. The District Court issued its findings on March 3, 1988, granting adoptive custody to LCOHS and terminating the father's parental rights to T.M.M. The father thereafter filed this appeal.

The first issue raised upon appeal questions the sufficiency of the evidence to support the District Court's termination decision. We have held on numerous occasions that the State must prove by clear and convincing evidence that all statutory termination criteria have been met before a court may terminate parental rights. E.g., In re R.B., Jr. (Mont. 1985), 703 P.2d 846, 42 St.Rep. 1055; In re J.L.B. (1979), 182 Mont. 100, 594 P.2d 1127. The statutory requirements relevant to this case which must be fulfilled prior to termination are found in § 41-3-609(1)(c) and (2), MCA. These sections state that a court may terminate parental rights after adjudicating the youth in need of care and after finding that:

> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time . . . [; and]

> (2) continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or

unwilling to give the child adequate parental care.

The district court is in the best position to judge whether the State has met its burden of proof and satisfied all statutory criteria. Consequently, we will presume that the District Court correctly decided to terminate parental rights if substantial credible evidence exists in support of its decision. In re V.B. (Mont. 1987), 744 P.2d 1248, 1249, 44 St.Rep. 1838, 1840; In re C.A.R. (Mont. 1984), 693 P.2d 1214, 1218, 41 St.Rep. 2395, 2398-99.

Neither parent contested Judge Holter's April 30, 1987 adjudication that all the children, including T.M.M., were youths in need of care. The father similarly does not contest Judge Brownlee's determination that T.M.M. is a youth in need of care. The father does, however, challenge the court's finding that the treatment plan was unsuccessful. The court approved treatment plan of July 18, 1986, required the father to seek and complete a minimum of twelve counseling sessions. The evidence clearly indicates that the father did not complete such counseling, though apparently he made a few attempts to obtain counseling. This fact alone amounts to substantial evidence demonstrating that the treatment plan was unsuccessful.

The father also challenges the court's determination that the conduct or condition that rendered him unfit was unlikely to change within a reasonable time. We find, however, that substantial credible evidence supports this finding as well. Betty Miller stated that the father demonstrated no interest in working with LCOHS. He also continued to deny all responsibility for any problems, instead placing the blame upon his children. A change in conduct or condition within a reasonable time is unlikely

7

given such a basic unwillingness to cooperate and accept responsibility.

In addition, Dr. Meyer stated in a letter written May 7, 1986, that five different therapists in the Center had provided intermittent family counseling over a period of eight years without any noticeable improvements. For this reason, the Center denied the father further counseling. As emphasized by Dr. Meyer:

> Neither parent has adequately cared for their children in the past, and there appears to be very little possibility that this situation will change in the future.

Lee Toner, a psychiatric social worker, stated that "it is highly unlikely that additional counseling or teaching of parenting skills or relationship skills will bring about any change" in him. This long history of unproductive counseling gives sufficient support to the District Court's determination that reasonable efforts at rehabilitation were attempted, but unsuccessfully.

The court's determination that reasonable efforts at rehabilitation were unsuccessful indicates that the court properly considered the factors mandated in § 41-3-609(2)(a) through (g), MCA. The court considered other factors which rendered the father unfit in addition to the failed rehabilitation efforts. The court specifically found that the father's sexual conduct toward his daughter and his failure to obtain counseling prevented him from being fit to provide T.M.M. with adequate parental care. Finding number 5 states:

> The conditions which render . . . [the father] unfit as a parent are unlikely to change within a reasonable period of time as he continues to deny responsibility

8

for the sexual abuse of his daughter
. . . and has not successfully entered
into counseling for his problems.

This finding satisfies the statutory requirement that a court make a finding that the parent's conduct or condition renders him unfit to give a child adequate parental care. We therefore find the second issue raised upon appeal without merit.

The third issue raised upon appeal is whether the District Court erroneously denied the father's motion for a continuance of the hearing until he could obtain a psychological evaluation under the sexual offender program. A motion to postpone a trial or hearing because of an absence of evidence can only be made "upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it." Section 25-4-501, MCA. The language of the statute is mandatory. Consequently, this Court has held that no abuse of discretion occurs when a court denies a motion for a continuance, for purposes of obtaining additional evidence, if no such affidavit is filed in support of the motion. In re the Marriage of Concepcion (Mont. 1984), 687 P.2d 718, 719, 41 St.Rep. 1675, 1677; State v. Harvey (1979), 184 Mont. 423, 431-32, 603 P.2d 661, 666.

In the instant case, appellant failed to file an affidavit showing the materiality of another evaluation and showing that he used due diligence in procuring a sexual offender psychological evaluation. The District Court thus did not abuse its discretion when it denied appellant's motion. Further, appellant failed to show good cause to support a postponement pursuant to § 25-4-503, MCA. The

9

record of numerous previous continuances merely indicates a pattern of unexcused neglect.

Finding no abuse of discretion in the denial of the appellant's motion for a continuance until further psychological evaluation, we hold that any bias as to the treatability of a sexual offender was harmless. Judge Brownlee's opinions did not act to deny appellant his constitutional right to a fair trial.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices