No. 89-595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF D.G.,
A Youth in Need of Care.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena,
            Montana

        For Respondent:

            Marc Racicot, Attorney General, Helena, Montana,
            Jennifer M. Anders, Assistant Attorney General,
            Helena, Montana
            Mike McGrath, County Attorney, Helena, Montana,
            Carolyn Clemens, Deputy County Attorney, Helena,
            Montana
            Randi Hood, Public Defender's Office, Helena,
            Montana

Submitted:  May 16, 1990

Decided:  July 19, 1990

FILED
Filed:
JUL 1 9 1990
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant L.G.H., the natural mother of D.G., appeals from the order of the District Court of the First Judicial District, Lewis and Clark County, terminating her parental rights. We affirm.

The issues raised on appeal are:

1)   Whether the District Court erred in terminating appellant's parental rights rather than awarding Department of Family Services long-term custody of D.G.

2)   Whether the District Court abused its discretion in ordering the Department of Family Services to consider visitation by the appellant following adoption.

D.G. was born on June 24, 1982, to appellant and G.G. Appellant also had two other children.  Beginning approximately at the time of D.G.'s birth, a pattern of chronic neglect of all the children, as documented by the Department of Family Services (Department), began developing.

The State's involvement with D.G.'s welfare was initiated in 1986 when D.G. was four years old.  The Department began receiving numerous reports about D.G. alleging neglect, physically aggressive behavior, and inappropriate sexual conduct for a boy his age. After each report the Department discussed its concerns with appellant.  Although appellant displayed a cooperative attitude, she repeatedly failed to follow through with counseling for D.G. or with the Department's recommendations that D.G. participate in various services.

2

In response to these numerous reports and appellant's failure to act, the Park County Attorney filed a petition requesting that the Department be given temporary investigative authority over D.G. Appellant signed a stipulation and treatment plan in August, 1987, which was approved by the court. Appellant and D.G. subsequently moved to Helena, Montana, resulting in a jurisdictional transfer of the petition to Lewis and Clark County.

On July 31, 1987, D.G. was placed in the child psychiatric unit of Shodair Children's Specialty Hospital (Shodair) with appellant's permission. The Shodair staff concluded that D.G. had been subjected to physical, emotional, psychological, and sexual abuse, and that his tantrums and manipulative behaviors were the result of a dysfunctional, abusive, and unstable family life.

Upon his release from Shodair in September, 1987, D.G. was placed in foster care. While in foster care, his behavior deteriorated. As a result, he was placed at the Intermountain Deaconess Home (Deaconess) for children.

In response to the petition of the Park County Attorney, a hearing was held in Lewis and Clark County and the court granted 90-day investigative authority to the Department. After the investigation was completed, the Lewis and Clark County Attorney's office filed a petition for temporary custody and protective services. A hearing was held at which the court found that D.G. was a youth in need of care. In June, 1988, the court granted the Department temporary custody of D.G. for a period of one year and directed the Department to prepare a treatment plan to be approved by the court. The treatment plan was prepared, signed by both

3

parents, and subsequently approved by the court. Appellant failed to comply with this second treatment plan.

In February, 1989, appellant was sentenced to twenty-five years at the State Women's Correctional Facility for the offense of criminal sale of dangerous drugs. Her sentence was amended by the Sentence Review Division of the Montana Supreme Court to twenty-five years with ten years suspended. With her amended sentence, appellant could be eligible for parole in approximately October, 1991. D.G. has been able to visit appellant on three or four occasions since her incarceration.

After the completion of the one-year temporary custody period, the County Attorney filed a petition to terminate appellant's parental rights. The petition also requested that the parental rights of D.G.'s father be terminated. A hearing was held. Testimony by D.G.'s therapist at Deaconess, Dodie Heffner, indicated that D.G. will need continued therapy and that such therapy can only thrive in an atmosphere of consistency, security and stability. Heffner stated that she still sees aggressive behavior and anxiety in D.G. and that he will need a lot of time and attention. She stressed that D.G. needs a permanent placement and recommended a permanent adoptive home. However, Heffner also recommended that it would be in D.G.'s best interests to retain some regular contact with his mother. The County Attorney supported such a recommendation.

Following the hearing, the court terminated the parental rights of appellant and D.G.'s father, concluding that neither appellant nor D.G.'s father could presently provide the type of

4

care which D.G. needs and it is unlikely that they would be able to do so in the foreseeable future. The court did recognize, however, that it would be in D.G.'s best interests to maintain continuing contact with appellant. Therefore, the court ordered that, before the Department consents to an adoption of D.G., consideration should be given as to whether the adoptive parents would voluntarily allow contact between appellant and D.G.

The first issue to be raised on appeal is whether the District Court erred in terminating appellant's parental rights rather than awarding Department of Family Services long-term custody of D.G.

The standard of review on appeal is:

> [w]e will not disturb the District Court's decision unless the findings of fact are not supported by substantial, credible evidence, or the conclusions of law amount to a clear abuse of discretion.

Matter of V.B., 229 Mont. 133, 744 P.2d 1248 (1987). Section 41-3-609, MCA, lists the criteria the court must consider in terminating the parental rights of an individual. The court must find the following:

> (c) the child is adjudicated a youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(1)(c), MCA.

The treatment plan was approved by the court on August 23, 1988, and had a six-month time frame. The evidence indicates that appellant's compliance with the treatment plan had not even begun

5

by the time appellant was jailed in early December, 1988. Although appellant's incarceration may have interfered with her ability to complete the treatment plan, her failure to even begin the plan within four months coupled with her consistent failure to complete parenting tasks previously assigned by the Department foretells of the potential failure of this treatment plan.

Although not specifically considered by the court, it should be noted that § 41-3-609(4)(b), MCA, provides that a treatment plan is not required if "the parent is incarcerated for more than 1 year and such treatment plan is not practical considering the incarceration." This section recognizes that a child may need help while a parent is incarcerated and that such help cannot be delayed pending the parent's release. D.G. needs immediate help which cannot wait for appellant's release.

Additionally, the court found that appellant's conduct and condition are unlikely to change within a reasonable time. Section 41-3-609(2), MCA, provides the court with various factors to consider in making such a finding. These factors include "any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent." Section 41-3-609(2)(g), MCA.

The evidence indicates that, through repeated efforts, the Department has been unable to rehabilitate appellant. Appellant is unable to care for D.G. The Department was involved with appellant for a period of seven years during which time little or no progress was observed in appellant's ability to parent any of her children. In fact, a chronic pattern of neglect was reported by the Department with respect to all three of appellant's

6

children.  The reports of the Department combined with appellant's current state of incarceration support the court's finding that appellant's condition and conduct are unlikely to change within a reasonable time.

Paramount to the court's decision to terminate parental rights are the best interests of the child.  Section 41-3-609(3), MCA. Although appellant argues that it would be in D.G.'s best interests to award the Department long-term custody of D.G. rather than terminating appellant's parental rights, the evidence indicates otherwise.

Long-term custody would allow appellant to retain visitation rights and to petition the court to regain custody of D.G.  See Matter of R.T.L.P., 777 P.2d 892, 46 St.Rep. 1354 (Mont. 1989). Testimony by Dodie Heffner indicated that it was in D.G.'s best interests to have appellant's parental rights terminated.  D.G. is an extremely emotionally disturbed child who needs consistency, security, and stability.  He needs a permanent placement, preferably in an adoptive home, and needs to know where he is going.  Long-term custody will not provide the permanency that D.G. so desperately needs.  Although both Heffner and the State indicated that continuing contact between appellant and D.G. may be in D.G.'s best interests, it is only a factor to be considered in evaluating his overall condition.  The court's termination of appellant's parental rights was proper.

The second issue on appeal is whether the District Court abused its discretion in ordering the Department to consider visitation by the appellant following adoption.

This Court previously addressed this issue in Matter of V.B. We held that, even if visitation by the natural parent is in the child's best interest, such visitation cannot be ordered if a parent's rights have been terminated. Matter of V.B., 229 Mont. at 137, 744 P.2d at 1250. Based upon § 41-3-611(1), MCA, termination divests the natural parent of all rights over the child, including visitation. Matter of V.B., 229 Mont. at 137, 744 P.2d at 1250.

However, we also held that, although the court cannot <u>order</u> visitation, even with the Department's approval, the court may order the Department to <u>consider</u> the availability of continuing contact between parent and child in the event of an adoption. Matter of V.B., 229 Mont. at 137, 744 P.2d at 1250. This continuing contact will only be allowed in exceptional cases. Matter of V.B., 229 Mont. at 137, 744 P.2d at 1250.

In this case, the court specifically concluded that, based upon the testimony of Heffner, this case is exceptional. The court ordered that the Department <u>consider</u> continuing contact in the event of an adoption. Such "restricted contact allowed by the court falls short of a visitation right" and is, therefore, within the District Court's discretion. Matter of V.B., 229 Mont. at 137, 744 P.2d at 1250.

Affirmed.

William E. Hunt
Justice

8

We Concur:

_John Conway Harrison_

_Gene F. Bar___

_R.C. McClure___

_Fred J. Weber___

Justices