No. 86-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN THE MATTER OF M.J.D., C.K.D.,
A.R.D., Youth in Need of Care.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Morin & Collins; Colleen Collins, Billings, Montana
Sally Johnson, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold Hanser, County Attorney, Billings, Montana
Greg S. Mullowney, Deputy County Attorney, Billings
Olsen, Christensen & Gannett; Damon Gannett, Billings,
Montana

---

Submitted on Briefs: Nov. 25, 1986

Decided: January 29, 1987

Filed: JAN 29 1987

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The natural parents of M.J.D., C.K.D., and A.R.D., appeal the order of the Thirteenth Judicial District Court terminating parental rights and awarding custody and care of the minor children to the Montana Department of Social and Rehabilitation Services. We affirm.

The natural father, S.D., is an enrolled member of the Sturgeon Lake Band of Cree Indians, Saskatchewan, Canada. The natural mother, J.D., is an enrolled member of the Northern Cheyenne Indian Tribe, Lame Deer, Montana. S.D. and J.D. are the natural parents of four daughters, C.D., age 4, A.D., age 7, M.D., age 15, P.D., age 19, and two sons, O.D., age 14, and L.D., age 17. Each of the children are members of the Cree Indian Tribe. The three youngest daughters, C.D., A.D., and M.D., are the subject of this appeal.

Father and mother are now divorced. During the marriage the family lived in Canada and also on the Northern Cheyenne Indian Reservation in Montana. The father was alcoholic and physically abusive of his family. In 1980, the father was convicted in U.S. District Court in Billings, Montana, of assaulting his oldest daughter with a broom handle. He was placed on probation and ordered to stay away from his children.

Following the father's probationary period the family returned to Canada. The mother left the family in the father's care and moved to Great Falls, Montana, where she stayed from July, 1981, to Janaury, 1982. The mother returned to the family and remained for 6 months, then left in July, 1982, with 4 of the 6 children and returned to Great Falls. The youngest boy remained with the father. The oldest daughter was removed from the family and made a ward of the Province of Saskatchewan.

2

The mother and father were divorced and the mother awarded custody of C.D., A.D, M.D., and L.D. In Great Falls, the mother and her children were placed in Mercy Home, a shelter for battered spouses. L.D. was removed and placed in the Receiving Home because he was stealing and destroying property in Mercy Home. The social worker assigned to the family found an apartment and attempted to help the mother with her parenting and housekeeping skills. The social worker also assisted the mother in buying household supplies and food. The mother frequently spent or gave away her money before her next check arrived.

The assistance provided to the mother in 1982 did not improve her home management skills. The children did not obey their mother. She constantly yelled at them. A.D., about 4 at the time, wandered away and was rescued by the police three times. On one occasion, the mother left her two youngest daughters at home alone. A.D. wandered off; C.D., after crying for a long while, crawled out the door and was taken in by neighbors. M.D. and L.D. had extremely poor school attendance, and L.D. was removed to special education classes due to his disruptive behavior.

From October, 1982, through May, 1983, the family was provided with home assistance, day-care, financial services, clothing, food and mental health counseling. The mother tried to cooperate with those assigned to help her, but was unable to improve her money management skills or control her children. During this period of time there were 3 or 4 different men who resided in the home. The mother was unable to perform the most basic of parenting skills.

In May of 1983, the family moved to Billings. Family Services in Billings was contacted, and a worker visited the family at their tent sight on the bank of the Yellowstone River. The living conditions were improper for young children so living arrangements were made at the Gateway

3

House. This placement was terminated quickly because the mother broke the confidentiality rule by having a male friend drop her off at the house.

Social worker Ken Boyd assumed the family's case in late May, 1983, and placed them in the Rescue Mission. This placement lasted a short time before the family was asked to leave because the mother had left the children unattended for four hours. September 9, 1983, A.D. was found unaccompanied riding the elevators in the Sheraton Hotel and returned home. Boyd discovered November 29, 1983, that L.D. had been forcing his younger sister M.D., to have sex with him for several years. M.D. also informed Boyd that her mother was continuing to bring male visitors home. The following day M.D. was placed in foster care and L.D. was removed to the Billings Youth Home.

Betty Penn was assigned as a home attendant to assist the mother. Ms. Penn worked with the mother for about 6 months and assisted her with shopping, transportation, keeping appointments and attending parenting classes. The mother missed many of her appointments with Penn and was often still in bed when Penn arrived to take her to parenting classes. Penn noticed different men staying in the home each time she visited. On December 10, 1983, Penn arrived in the morning to find A.D. with only her underpants on and C.D. running around naked. L.D., who had been removed from the home, was lying on the couch and two others were lying on the floor. A.D. informed Penn that her mother had gone to a movie the night before and not returned. Penn returned with Boyd and an officer and removed the children from the home.

It was discovered that both L.D. and M.D., the older sister, had had inappropriate sexual contact with C.D. and A.D. When placed in foster care, A.D. displayed inappropriate sexual behavior.

4

Dr. Donna Veraldi, a clinical psychologist, evaluated the mother, A.D. and M.D. in December, 1983. She found that the children suffered from environmental deprivation and the mother had a dependent personality disorder. Dr. Veraldi recommended mental health counseling and in-home training for the mother.

On January 12, 1984, the Yellowstone County Attorney was granted temporary investigative authority to investigate the welfare of C.D., A.D., M.D., and L.D. Counsel was provided for the mother, a guardian ad litem appointed for the children, and notice given to the father of the proceedings. On January 24, 1984, L.D. was adjudicated a delinquent youth for the offense of incest against his sister, and committed to Pine Hills School for Boys.

On February 28, 1984, the District Court approved a treatment plan for the mother. The mother fared very poorly in the treatment plan, so the Department of Social and Rehabilitation Services (SRS) filed a petition on May 10, 1984, for permanent custody and authority to assent to adoption of C.D. and A.D. In June, the father contacted SRS indicating he wished to obtain custody of the children. The District Court approved a service treatment agreement for the father to be implemented by Canadian agencies.

Hearings concerning the petition for permanent custody filed by SRS were conducted December 18, 1984, and July 31, 1985. Testimony was heard from the psychologists and social workers involved with the case, and from both parents. The District Court issued its order December 13, 1985, awarding temporary custody of C.D., A.D., and M.D., to SRS. A further hearing was held January 10, 1986, updating the status of the children. Following hearing, the District Court issued its amended findings, conclusions of law and order awarding temporary custody of M.D. to SRS until the age 18, the permanent custody of C.D. and A.D. to SRS, and terminating

5

the parents' rights to C.D. and A.D. Motion to amend or alter judgment was denied and both parents appeal.

The mother raises the following issue:

1) Whether there is clear and convincing evidence to support the District Court conclusion that M.D., C.D., and A.D., were youths in need of care and that the mother's parental rights should be terminated?

The father raises the following issues:

1) Whether the District Court erred in finding that the father abandoned his children?

2) Whether the District Court abused its discretion in terminating the parental rights of the father?

3) Whether the District Court abused its discretion in refusing to relinquish jurisdiction to the Sturgeon Lake Band of Cree Indians?

The mother contends there is not substantial evidence supporting termination of her parental rights. The mother takes issue with the court's findings nos. 4 and 5 which found the mother unfit, unable, and unwilling to care for her children, that she permitted them to be sexually assaulted, and that she has received several years of rehabilitative training which has failed. The mother also contends the court approved Service Treatment Agreement between SRS and the mother was of inadequate duration to allow her to improve her skills of parenting and home management.

Section 41-3-609, MCA, provides that a court may terminate a parent-child legal relationship upon finding the child is a youth in need of care, and both of the following exist: 1) a court approved treatment plan has not been complied with by the parents; and 2) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

We find substantial, credible evidence in the record supporting termination of the mother's parental rights. The

mother received assistance and training from July, 1982, through May, 1983, while living in Great Falls. Her home management and parenting skills did not improve. The family moved to Billings, and family services were provided by Yellowstone County. Due to the mother's inappropriate conduct the family was removed from two home placements. A social worker assigned to help the mother reported no improvement by the mother, different men residing in the home from week to week, and indications of sexual abuse among family members.

The service treatment agreement covered the period March 1, 1984, through April 10, 1984. The report filed April 11, 1984, found the mother failed to complete the agreement and was unable to provide a stable home environment. Contrary to the mother's assertions that she had only 40 days to improve her skills, we note that she received nearly two years of training and assistance with no sign of improvement. We find no abuse of discretion by the District Court in terminating the mother's parental rights.

The father contends the District Court erred in finding he had virtually abandoned his children. Abandonment is defined in § 41-3-102(2)(d), MCA, as occurring when the parent,

> abandons the child by leaving him under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or by willfully surrendering physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child;

We do not agree with the father's contention that the District Court's finding of "virtual abandonment" differs from the statutory standard. There is substantial evidence of abandonment as defined in the above statute.

7

The mother moved to Great Falls with 4 of the 6 children in July, 1982. During the next two years the father made minimal effort to contact his family. He wrote one letter to the mother while the family was staying in Great Falls. He made a phone call in March, 1984, to Ken Boyd wanting to know what was happening to his children.

The father did not make known his intention to acquire custody and provide care for the children until approximately June, 1984, three months after he was informed of the custody proceedings filed by SRS. The period for establishing abandonment pursuant to § 41-3-102(2)(d), MCA, is six months. In this instance, the father had no contact with the children and did not state any intention of resuming care of the children for a period of two years.

The father testified that on one occasion a social worker would not inform him of his children's whereabouts. The record is unclear on this matter. However, it is clear that the father did not inform his wife or the social workers in Montana of an intention to resume custody of the children until termination proceedings had begun. There is substantial credible evidence in the record supporting the District Court finding that the father abandoned his children.

The next issue is whether the District Court erred in terminating the father's parental rights. Criteria for termination are listed in § 41-3-609, MCA, which provides in part:

> Criteria for termination. (1) The court may order a termination of the parent-child legal relationship upon a finding that the circumstances contained in subsection (1)(a), (1)(b), or (1)(c), as follows, exist:
> (a) the parents have relinquished the child pursuant to 40-6-135;
> (b) the child has been abandoned by his parents as set forth in 41-3-102(3)(d); or

8

> (c) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

The father contends there is not substantial evidence to support the District Court's finding that he did not successfully complete the treatment plan. We need not address this issue because the court found the father abandoned his children. Only one of the three circumstances listed in § 41-3-609(1), MCA, need be found in order to terminate a parent's rights. There is substantial credible evidence of abandonment by the father, which meets the criteria for termination of parental rights under § 41-3-609, MCA.

The final issue is whether the District Court abused its discretion in refusing to relinquish jurisdiction to the Sturgeon Lake Band of Cree Indians. The Sturgeon Lake Band participated in the dispositional hearings and presented a formal resolution asking the District Court for custody of the children. The District Court denied the request, and concluded that it was in the best interests of the children to remain in the custody of SRS with authority to assent to adoption.

One of the District Court's concerns was that if C.D. and A.D. were placed on the Cree Reservation in Canada, their older brother would have access to them. The father contends newly discovered evidence indicating the brother will be at a boys ranch hundreds of miles away compels reversal of the placement with SRS. The father further contends the Sturgeon Lake Cree Band has appropriate services to treat the abused children, and the children rightfully belong within their Indian tribe.

9

The District Court is required to consider the best interest of the children in determining placement pursuant to § 41-3-406(5), MCA. Both C.D. and A.D. were placed in foster homes during the pendency of the proceedings. At the final dispositional hearing, a report concerning A.D. was introduced in which the reviewing psychologist strongly recommended that there be no change in A.D.'s placement and her prognosis for treatment appeared very good. Ken Boyd testified that C.D. should remain in her current placement with the ultimate goal of reuniting her with A.D. and placing both children in a Native American home. This evidence supports the District Court conclusion it is in the best interests of A.D. and C.D. that custody be awarded to SRS. We find no abuse of discretion.

The District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

10