No. 90-629

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

CARLA J. SMITH-CARTER,

          Petitioner and Appellant,

     -vs-

AMOCO OIL COMPANY, (Cyprus Industrial
Minerals Beaverhead Mine),

          Employer,

     and

AMOCO OIL COMPANY,

          Defendant and Respondent.

FILED

JUN - 4 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               R. Lewis Brown, Jr.; Butte Legal Center, Butte,
               Montana

          For Respondent:

               Paul C. Meismer; Garlington, Lohn & Robinson,
               Missoula, Montana


                              Submitted on Briefs:   May 2, 1991

                                        Decided:  June 4, 1991

Filed:



_____
                 Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Petitioner, Carla Smith-Carter, appeals from the judgment of the Workers' Compensation Court of the State of Montana which found petitioner permanently partially disabled and entitled to 500 weeks of permanent partial disability benefits. We affirm the Workers' Compensation Court.

On appeal petitioner raises five issues which this Court has consolidated into one issue: whether the judgment of the Workers' Compensation Court is supported by substantial credible evidence.

This complaint was originally heard by the Workers' Compensation Court on October 9, 1986. In that complaint petitioner alleged a dispute between the parties regarding the nature, degree, and extent of injuries from a February 6, 1981, industrial accident which occurred while petitioner was employed by Cyprus Industrial Minerals (Cyprus).

As the result of the 1986 hearing, the Workers' Compensation Court found that petitioner was not permanently totally disabled, but was permanently partially disabled, although the degree of disability could not be determined because an impairment rating of petitioner's left wrist was lacking.

On April 10, 1989, Smith-Carter filed another petition in the Workers' Compensation Court, seeking to adjudicate the nature, duration, and extent of her injuries.

After a hearing on November 1, 1989, and upon consideration of depositions taken before and after the hearing, the court on August 21, 1990, issued an order adopting the findings of fact and

2

conclusions of law of the hearing examiner and entered judgment determining that petitioner is permanently partially disabled, but not permanently totally disabled. The judgment awarded her 500 weeks of permanent partial disability payments. Petitioner requested a rehearing on September 11, 1990, and upon denial by the Workers' Compensation Court, appealed to this Court.

Petitioner was employed by Cyprus in October of 1979 at its Beaverhead Mine near Ennis, Montana, as a "talc sorter." Her duties with Cyprus entailed picking and sorting talc rocks from a conveyor belt; the rocks weighed anywhere from a few ounces to two hundred pounds.

On February 6, 1981, petitioner left her job because the pain she had been experiencing in her right wrist became too great. She returned to work on May 4, 1981, with a brace on her right wrist. The addition of the brace forced petitioner to use her left arm more than usual in the performance of her duties, and petitioner began to notice pain in her left wrist.

Because of increased difficulties in her right arm and pain in her left wrist, petitioner sought medical assistance from several doctors. Petitioner initially consulted Dr. Wilkins, who sent her to Dr. Losee in Ennis, Montana. Dr. Losee ultimately referred her to Dr. Thomas Johnson in Billings, Montana.

In view of the importance of the testimony of Dr. Johnson and other experts, we will summarize the opinions of each of the principal witnesses.

## Medical evidence

Petitioner first saw Dr. Johnson, who became her attending physician, in August 1981. Dr. Johnson diagnosed carpal tunnel syndrome in both wrists, eventually performing two surgeries on her right wrist. Despite the surgeries, petitioner continued to experience problems with her right wrist. Dr. Johnson concluded that surgery on her left wrist would be futile in view of the poor results with the other wrist.

In April 1989, petitioner began complaining of neck pain. Dr. Johnson requested nerve-conduction studies which were performed by Dr. Donald H. See of Billings on May 3, 1989. The test results indicated that nerve velocity was normal without any delay. On May 26, 1989, petitioner received an MRI scan which showed no physical abnormalities, such as a pinched nerve, in her neck. Although Dr. Johnson was unable to explain the neck pain, he did not relate the neck pain to petitioner's carpal tunnel syndrome.

Dr. Johnson stated that petitioner's strength has remained constant since 1987. Using American Medical Association guidelines, Dr. Johnson determined that petitioner's left wrist was ten percent impaired. Her two wrist impairments converted to a thirteen per cent "whole man" impairment.

Dr. Johnson reviewed three occupations, pharmacy cashier, self-service gas station cashier, and bartender, submitted by Pete Sesselman, a rehabilitation counselor. Dr. Johnson felt that petitioner would be unable to perform the duties of a bartender because of the lifting involved and the temperatures of the

4

coolers. Dr. Johnson agreed that if the job entailed only working on four or five customers a day without stocking shelves or a cooler, as described by Sesselman, then petitioner could work as a bartender. In Dr. Johnson's opinion, although petitioner would experience some pain during an eight-hour workday, the pain would not prevent her from doing the tasks required by the other suggested occupations.

At Dr. Johnson's request, Dr. See, a neuromuscular and musculoskeletal specialist, examined petitioner. After extensive examination and testing, Dr. See completed a physical capacities form used by his office. In addition to some restriction in grasping, pushing-pulling, and fine manipulation, Dr. See found that petitioner should limit frequent lifting to ten pounds and occasional lifting to twenty-five pounds. Dr. See also advised that petitioner refrain from driving more than one to three hours without a break. According to Dr. See, petitioner had the ability to sit, stand, or walk for an eight-hour day and could operate foot controls repetitively.

In Dr. See's opinion, petitioner was not totally disabled and could perform the jobs recommended by Sesselman.


Vocational and rehabilitation evidence

A rehabilitation counselor employed by Cyprus, Pete Sesselman, who had not interviewed or tested petitioner because she refused to meet with him in 1986, testified that in his opinion petitioner had the skills to perform the occupations of self-service gas

5

station cashier, pharmacy cashier, and bartender. Sesselman reviewed the depositions and reports of medical experts and vocational counselors, as well as the testimony taken at the 1989 hearing. In addition, in June 1989 Sesselman sat in on petitioner's deposition. Based on this information and several types of vocational criteria, Sesselman submitted to Dr. Johnson and Dr. See descriptions of the three occupations in the Ennis area. Sesselman admitted that he did not consider petitioner's pain in his assessments because the degree of pain was a medical determination which physicians could weigh when evaluating job descriptions.

In Sesselman's opinion, petitioner was capable of completing her GED and acquiring vocational training.

Petitioner's vocational expert, Ian Steel, was of the opinion that she could not perform even entry level, sedentary occupations, because of pain, limited education, and lack of skills. He stated that petitioner could not sit, stand, or use her hands for prolonged periods of time.

A professional vocational evaluator employed by the Butte Sheltered Workshop, Robert McGuire, tested petitioner six hours a day for four days in 1986. In reaching his conclusions, McGuire had analyzed earlier medical reports, but had not reviewed recent depositions of the physicians who had treated petitioner. McGuire testified that "depending on the training, how long, intense the training is . . . [petitioner] could get into some sort of training and job." He felt that petitioner could probably handle the

6

bartender's job at the Silver Dollar Bar if not overburdened with customers.

The Workers' Compensation Court concluded that petitioner was capable of performing particular jobs in her labor market and noted that college training after completion of her GED could provide her with the skills to enter a number of additional occupations.

I

Petitioner claims that she is permanently totally disabled, rather than permanently partially disabled as determined by the Workers' Compensation Court, because her medical condition prevents her from finding regular employment of any kind in her normal labor market.

This Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of witnesses or the weight of their testimony. When conflicting evidence is presented, the scope of review is to establish whether substantial evidence supports the lower court's findings, not whether evidence may support contrary findings. O'Brien v. Central Feeds (1990), 241 Mont. 267, 271-72, 786 P.2d 1169, 1172. In sum, this Court's role is not to redetermine all issues presented to the lower court, but rather to examine whether the findings of the lower court are based upon substantial credible evidence.

When critical medical testimony is presented through depositions, this Court can assess the evidence as well as the lower court. Stangler v. Anderson Meyers Drilling Co. (1987), 229 Mont. 251, 255-56, 746 P.2d 99, 101-02; Dunn v. Champion

International Corp. (1986), 222 Mont. 142, 147-48, 720 P.2d 1186, 1189.

Here, medical testimony does not conflict. Dr. Johnson was the treating physician of petitioner's choice, and his involvement in this case spans a time period of over ten years from 1981 to the present time. Dr. See had less involvement with the patient, but his conclusions have not been challenged at any stage in the proceedings below. Both physicians approved, without restriction, the jobs in Ennis, Montana, of pharmacy cashier and cashier at two self-service gas stations. In addition, both physicians accepted the job of daytime bartender with limitations on lifting as described by Sesselman.

The Workers' Compensation Court had the opportunity to personally observe petitioner and her husband testify on more than one occasion. The court was in the best position to determine petitioner's credibility. According to our standard of review, the court's findings based on her testimony are to be accorded great weight.

Petitioner sought to be determined permanently totally disabled pursuant to § 39-71-116(13), MCA (1979). To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial evidence of (1) what jobs constitute her normal labor market; and (2) a complete inability to perform the duties associated with those jobs because of the work-related injury. Metzger v. Chemetron Corp. (1984), 212 Mont. 351, 355, 687 P.2d 1033, 1035; Spooner v. General Insurance

Co. of America (1983), III Workers' Compensation Court Decisions No. 85.

Petitioner failed to satisfy the test found in Spooner and Metzger. Although petitioner's physical condition prevents her from returning to the type of work in which she was engaged before she was injured, she is not precluded from a reasonable prospect of employment in her normal labor market.

Petitioner attempts to rebut the uncontroverted medical testimony of her treating physician and Dr. See through testimony of her expert, Robert McGuire, who was not a practicing physician or certified by any medical review board in Montana. We note that McGuire did not take issue with the medical findings. McGuire agreed that petitioner could perform the work of bartender and cashier at self-service gas stations. His main concern was whether petitioner had difficulty standing and operating the cash register with her fingers for extended periods of time, although he conceded that if the job descriptions were accurate she could perform the physical tasks required. McGuire questioned whether petitioner could perform "competitively" over a forty-hour work week.

McGuire admitted that petitioner could be retrained for other jobs and could perform them competitively. McGuire was unable to comment upon Sesselman's descriptions of specific job tasks since he had not reviewed Sesselman's reports. He concluded that any disagreement he had with Dr. Johnson, Dr. See, or Mr. Sesselman would have no medical basis.

Finally, Ian Steel's June 1989 evaluation of petitioner was

questionable because Steel had drawn conclusions about petitioner's physical capacities without reviewing the June 1989 reports of Dr. Johnson and Dr. See. After Steel read the medical depositions and reports, he still refused to modify his conclusion that petitioner had the skills, but not the physical capacity, to perform the jobs. The Workers' Compensation Court properly discounted Steel's testimony as unfounded and of little assistance in evaluating petitioner's claim.

Substantial, credible evidence supports the findings of the court below. We do hereby affirm the judgment of the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10