No.   91-623

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF INQUIRY
INTO B.T.B AND B.B.,

Youths in Need of Care.

FILED

JUL 0 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Third Judicial District,
               In and for the County of Granite,
               The Honorable Ted L. Mizner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Vincent  J.  Kozakiewicz,  Attorney  at  Law,  Dillon,
            Montana

        For Respondent:

            Hon. Marc Racicot, Attorney General, Helena, Montana
            Patricia  J.  Jordan,  Assistant  Attorney  General,
            Helena, Montana
            J.   Allen   Bradshaw,   Granite   County   Attorney,
            Philipsburg, Montana
            Conde F. Mackay, Attorney at Law, Anaconda, Montana


                              Submitted on Briefs:   June 26, 1992

                                        Decided:   July 7, 1992

Filed:

                          *[signature]*

                        _____
                              Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The Third Judicial District Court, Granite County, terminated the parental rights of Darin and Dana Blackburn, the natural parents of B.T.B. and B.B. Darin Blackburn has not contested the termination of his parental rights. Dana Blackburn appeals. We affirm.

Ms. Blackburn raises the following issues for our review:

1. Did the District Court properly terminate Ms. Blackburn's parental rights?

2. Did the guardian ad litem properly protect the rights of the children?

A hearing on the termination of custody was held in August 1991. Vicki Weida and Sharon Sherd, social workers with the State of Montana, Department of Family Services (DFS) testified on behalf of the State. The record reveals that the DFS became involved with the Blackburn family in March 1988. At that time, Dana Blackburn was convicted of endangering the welfare of her three-year-old son B.T.B. when B.T.B. was found wandering alone in Drummond, Montana. As a condition of her sentence, the court required Ms. Blackburn to attend DFS parenting classes. She failed to attend these classes and missed monthly appointments with the DFS case worker.

Ms. Weida testified that in May 1989, the DFS received additional referrals relating to domestic violence, alcohol abuse and continuing neglect of B.T.B. within the Blackburn home. Based on this information, the District Court granted the DFS temporary investigative authority (TIA), and ordered the Blackburns to abstain from alcohol, undergo psychological and chemical dependency

evaluation, and complete marriage counseling. The Blackburns failed to comply with the court order. In November 1989, the Blackburns' second child B.B. was born.

On June 5, 1990, the District Court granted temporary custody of B.T.B. and B.B. to the DFS who placed the children in foster care. The court also approved a treatment plan requiring the parents abstain from alcohol, undergo chemical dependency treatment, and attend marital and family counseling. Initially, the Blackburns complied with the plan. As a result of this progress, the DFS returned the children to the Blackburn home in December 1990.

Ms. Weida testified that in February 1991, the DFS was forced to take the children into protective custody after the Blackburns failed to pick up their children from the babysitter. Neither parent contacted the DFS regarding the whereabouts of the children for over twenty-four hours. The children were once again placed in foster care. At that time, both Dana and Darin Blackburn had resumed drinking alcohol, discontinued aftercare treatment for chemical abuse and missed scheduled appointments for marital counseling and family counseling with B.T.B. In addition the DFS received reports of domestic violence, Darin Blackburn was convicted of second offense DUI, and Dana was convicted of two counts of disorderly conduct. All these incidents were alcohol related.

In March 1991, the Blackburns appeared to be separated. As a result, the court approved a treatment plan addressing the needs of

3

each parent. Ms. Weida reviewed the plan with the Blackburns and obtained medicaid assistance for the necessary counseling. She testified that the purpose of the agreement was to reunite the family. However, subsequent to the adoption of the second treatment plan, the Blackburns continued their pattern of noncompliance. Individually, and collectively, they missed counseling appointments as well as scheduled visitation with the children.

In May 1991, after working with the Blackburns for three years, the DFS filed to terminate Darin and Dana Blackburn's parental rights in order to provide stability for the children. At the termination hearing on August 6, 1991, Ms. Weida and Ms. Sherd testified that it was in the best interest of the children to terminate the parental rights of Dana and Darin Blackburn. They further testified that B.T.B. was depressed and required counseling and special education due to lack of emotional stability. B.B. had bonded well with her foster mother, but needed permanence. Finally, the prospects of placing the children in adoptive homes offering permanence and stability was high. On October 10, 1991, the District Court terminated the parental rights of Dana and Darin Blackburn with regards to B.T.B. and B.B., their minor children.

I

Did the District Court properly terminate Ms. Blackburn's parental rights?

In order for the court to terminate Ms. Blackburn's parental rights the State must meet the statutory criteria of § 41-3-609,

4

MCA. Section 41-3-609, MCA, allows termination of parental rights if the children are adjudicated youths in need of care, the parents have either failed to comply with the court approved treatment plan or the plan is unsuccessful, and the conduct or condition rendering the parents unfit is unlikely to change within a reasonable time. Further, the State must present clear and convincing evidence that these statutory criteria have been met. In the Matter of A.W. and A.V. (1991), 247 Mont. 268, 806 P.2d 520.

Ms. Blackburn contends that the State failed to present clear and convincing evidence that Dana failed to comply with the second treatment plan.

First, Ms. Blackburn contends the State did not give her adequate time to comply with the second treatment plan. This Court recently addressed a similar argument where the lower court terminated parental rights of the natural mother just 40 days after approving a treatment plan. In the Matter of M.J.D., C.K.D., A.R.D. (1987), 225 Mont. 200, 731 P.2d 937. In that case we affirmed the lower court, concluding that the forty days prior to the petition did not accurately reflect two years effort on the part of the DFS to rehabilitate the family. In the Matter of M.J.D., 225 Mont. at 205, 731 P.2d at 939-940.

Similarly, in this case the six weeks prior to filing the petition do not accurately reflect the DFS's efforts to rehabilitate the family. The DFS has worked with both parents since 1988. During this time, Dana and Darin Blackburn both failed to comply with the approved treatment plans. Neither displayed a

5

commitment to follow through on counseling and treatment necessary to develop stability and skills to care for their children.

In this case, there were two successive plans approved. The District Court found that it was the parents' failure to comply with both treatment plans over a long period of time that indicated they were unlikely to provide adequate parenting to their children within a reasonable time. In In the Matter of M.J.D., we found no abuse of discretion by the court when it considered the department's efforts prior to approving the treatment plan in ordering the termination of parental rights. In the Matter of M.J.D., 225 Mont. at 205, 737 P.2d at 940. Here, as in In the Matter of M.J.D., we conclude the District Court did not abuse its discretion in considering Darin and Dana Blackburn's non-compliance with the first treatment plan, in ordering the termination.

Next, Ms. Blackburn claims that in ordering termination, the court failed to consider the significant progress she made since her separation from Darin Blackburn. The record indicates that Dana separated from Darin Blackburn in April 1991 and moved from Drummond, Montana to Deer Lodge, Montana. It further indicates that since the separation, Ms. Blackburn obtained full time employment and became involved in another relationship.

Here, the District Court found: "Recent changes in Dana's life are not significant enough to overcome the history of abuse and neglect of these minor children over the last three years." These findings of the lower court will not be disturbed on appeal unless the findings are clearly erroneous. Rule 52(a) M.R.Civ.P.

6

In this case, the record supports the District Court's findings. Here, Ms. Blackburn indicated in testimony that her change in circumstances would allow her to properly care for her children. However, both Ms. Sherd and Ms. Weida offered contradictory testimony wherein they stated the Blackburns had a history of separating then reuniting. Further, Ms. Weida testified that these changed circumstances did not convince her that Ms. Blackburn could adequately care for her children:

> I have no confidence in Dana's ability to carry out the necessary treatment. I have lost that confidence completely. So I do not believe that separate, or together with Darin, that she will be able to complete the necessary items that would make it possible for us to return the children to her, and it would take at least six months for that to happen, and that's another six months of these children's lives, and with her history where she almost completed in December, and then didn't do some of the significant pieces, I don't have confidence that she's going to be able to maintain the responsibility needed to adequately parent the children. Parenting and loving are two different pieces.

The record shows that after the DFS filed the petition to terminate the Blackburns' parental rights, Dana and Darin both made efforts to attend scheduled visitation with the children. However, neither parent had completed any portion of the second treatment plan by the August 1991 hearing, a full six months after the court's approval of the plan.

This Court will not substitute its judgment for that of the lower court regarding the credibility of witnesses or the weight of their testimony. Smith-Carter v. Amoco Oil Co. (1991), 248 Mont. 505, 510, 813 P.2d 405, 408. Here, despite the conflicting

7

evidence presented, we conclude the findings of the District Court are supported by the record.

We conclude the District Court's findings are not clearly erroneous. Further, the State has presented clear and convincing evidence that Ms. Blackburn failed to comply with either treatment plan, and that the conditions rendering her unfit as a parent were unlikely to change within a reasonable time.

We hold the District Court properly terminated the parental rights of Ms. Blackburn.

## II

Did the guardian ad litem properly protect the rights of the children?

Ms. Blackburn contends that the guardian ad litem compromised the rights of the children by failing to conduct an independent investigation regarding the alleged abuse and neglect.

However, Ms. Blackburn failed to raise the issue before the trial court. This Court will not consider for the first time on appeal an issue which was not raised in the district court. Keller v. Dooling (1991), 248 Mont. 535, 540, 813 P.2d 437, 441. We conclude the issue is not properly before this Court.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

8

_John Conway Harrison_

_Karla M. Gray_

_[signature]_

_[signature]_

_William E Hunt Sr_

Justices