No. 92-097

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MATTER OF
A.E., C.E., S.R. and J.R.,
Youths in Need of Care.



FILED

OCT 8 - 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

E. June Lord, Attorney at Law, Great Falls, Montana

For Respondent:

Ross P. Richardson, Henningsen, Vucurovich &
Richardson, Butte, Montana

For Guardian Ad Litem:

Mary Kay Starin, Attorney at Law, Butte, Montana


Submitted on Briefs: July 30, 1992

Decided: October 8, 1992

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

L.D. (appellant), the mother of A.E., C.E., S.R. and J.R. (children), appeals from two orders of the District Court for the Second Judicial District, Silver Bow County. The first order found the children to be youths in need of care and abandoned by their mother and fathers. Based upon these findings, the court terminated appellant's parental rights as to each of the children and gave permanent legal custody, including authority to consent to adoption, to the Montana Department of Family Services (DFS).

The second order denied appellant's motion to rescind the order terminating her parental rights and specifically reaffirmed the termination order. We affirm the decisions of the District Court.

We state the issues raised by appellant as follows:

1. Did the District Court err in terminating appellant's parental rights based upon abandonment?

2. Did the District Court correctly rule the requirements of the code had been met and that appellant was afforded due process prior to terminating her parental rights?

3. Did the District Court properly hold appellant's motion to rescind the order terminating her parental rights was untimely?

On November 5, 1990, DFS in Butte became involved with appellant and her children in an attempt to ascertain whether the children were abused or neglected or otherwise in need of care. After a preliminary investigation, the children were placed in foster care, and DFS petitioned the District Court for an order of

2

temporary investigative authority and protective services. At a show cause hearing on November 16, 1990, the District Court issued the temporary order which was effective until February 14, 1991.

On December 20, 1990, appellant consented to a treatment plan in which she was to meet certain criteria aimed at eliminating her chemical dependency and establishing a nurturing home environment for herself and her children. Appellant did not comply with the terms of the treatment plan. As a result, DFS petitioned the District Court for temporary legal custody of the children on February 11, 1991. On the same date, appellant waived her right to a hearing on the temporary legal custody issue and consented to DFS having temporary legal custody of her children.

Additionally, appellant entered into a second treatment plan by court-ordered consent decree on February 11, 1991. However, by the end of February 1991, appellant once again was not in compliance with the terms of the treatment plan. The DFS social worker continued in her attempts to work with appellant but with no success. By April 15, 1991, appellant had ceased all contact with DFS and her children. Efforts were made to contact appellant but her whereabouts were unknown. DFS petitioned for termination of appellant's parental rights on August 9, 1991.

A hearing on the petition was held on August 26, 1991. Appellant was not present at the hearing. On August 27, 1991, the District Court terminated the parental rights of appellant and

granted permanent legal custody and authority to consent to adoption to DFS. Appellant's motion to rescind the termination order was denied on February 4, 1992. This appeal followed.

It should be noted the District Court also terminated the parental rights of the father of A.E. and C.E. and the father of S.R. and J.R. The fathers do not appeal the District Court ruling and are therefore not considered.

I.

Did the District Court err in terminating appellant's parental rights based upon abandonment?

A "parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." Matter of R.B. (1985), 217 Mont. 99, 103, 703 P.2d 846, 848. The State must show by clear and convincing evidence the parent(s) abandoned the children prior to parental rights being terminated. Matter of M.W. (1988), 234 Mont. 530, 533-34, 764 P.2d 1279, 1281.

On appeal, we will affirm the District Court's decision to terminate parental rights where substantial, credible evidence exists to support that decision. Matter of T.M.M. (1988), 234 Mont. 283, 287, 762 P.2d 866, 869. The judge hearing oral testimony has the advantage in determining the outcome of the controversy. We will not disturb the District Court findings on appeal unless there is a mistake of law, or a finding of fact not

4

supported by substantial, credible evidence. Matter of Henderson (1975), 168 Mont. 329, 333, 542 P.2d 1204, 1206; Matter of S.P. (1990), 241 Mont. 190, 194, 786 P.2d 642, 644.

Appellant contends the District Court erred in finding she had abandoned her children. She bases her argument upon the premise that her actions did not meet the requirements of § 41-3-102, MCA. We disagree. The District Court applied the appropriate section of the code applicable to termination of parental rights and made a finding that appellant had in fact abandoned her children. This finding is supported by the record.

Under § 41-3-609, MCA, parental rights can be terminated when any one of three circumstances exists. Matter of M.J.D. (1987), 225 Mont. 200, 206, 731 P.2d 937, 941. One of the circumstances in which parental rights can be terminated is abandonment. The applicable subsection provides:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist: . . .
>
> (b) the child has been abandoned by his parents as set forth in 41-3-102(3)(d); . . .

Section 41-3-609(1)(b), MCA.

Section 41-3-102(3)(d), MCA, defines abandonment as occurring when the parent:

> abandons the child by leaving him under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or by willfully surrendering physical custody for

5

a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child; . . . [emphasis added].

We have previously held "[t]he period for establishing abandonment pursuant to § 41-3-102(3)(d), MCA, is six months." M.J.D., 731 P.2d at 940. Matter of M.W. (1988), 234 Mont. 530, 534, 764 P.2d 1279, 1282. Both of these cases involved facts which warranted application of the second clause in § 41-3-102(3)(d), MCA, regarding willful surrender of physical custody of the child.

The first part of § 41-3-102(3)(d), MCA, applies where a parent abandons a child under circumstances that make reasonable the belief the parent does not intend to resume care of the child. No time frame is specified for this particular clause. We now clarify our previous rulings and hold the six-month requirement is applicable only to the subsection of § 41-3-102(3)(d) regarding willful surrender of physical custody of the child.

In the case at bar, substantial, credible evidence supports the District Court's decision to terminate appellant's parental rights. The record indicates appellant's last contact with any of her four children was March 19, 1991. It was at this time that DFS once again removed appellant's daughters from her home because of appellant's continued failure to follow the treatment plan. Despite a letter from DFS to appellant requesting she contact DFS to continue with efforts aimed at reuniting her with her children,

appellant did not contact DFS until April 15, 1991. Upon contacting DFS, appellant informed her social worker she had just returned to the Butte area and was planning to move to Dillon.

Appellant requested DFS send her children to Dillon to set up foster care there. The DFS social worker informed appellant that the treatment plan had to be complied with in Butte, and that all visitation with her children had to occur in Butte. It was at this time that appellant ceased all contact with her children and DFS. Substantial efforts by DFS to ascertain the whereabouts of appellant from the middle of April 1991, until the termination hearing in August 1991, were fruitless.

We hold there was no mistake of law or finding by the District Court not supported by substantial credible evidence. We affirm the District Court's holding that appellant abandoned her children by leaving them under circumstances that made reasonable the belief she did not intend to resume care of them.

II.

Did the District Court correctly rule the requirements of the code had been met and that appellant was afforded due process prior to terminating her parental rights?

Appellant next contends she was deprived of her fundamental right to fair procedure because the District Court did not afford her proper procedural safeguards. Specifically, appellant argues because she was not personally served with notice of the termina-

7

tion proceedings, her due process rights were violated. In the alternative, appellant argues she should have been served by publication. However, appellant's reliance upon § 41-3-401(4) and (5), MCA, in support of these propositions is misplaced. Section 41-3-401, MCA, dictates the procedures to be followed when the State moves for a determination that children are abused, neglected, or dependent. These procedural aspects do not apply to termination proceedings.

The proper procedure to be followed when petitioning for termination of a parent-child legal relationship is found in Title 41, Chapter 3, Part 6, MCA:

> This part provides procedures and criteria by which the parent-child legal relationship may be terminated by a court if the relationship is not in the best interest of the child. The termination of the parent-child legal relationship provided for in this part is to be used in those situations where there is a determination that a child is abused, neglected, or dependent, as defined in 41-3-102.

Section 41-3-602, MCA.

In November 1990, the District Court found that the children were abused, neglected, or dependent pursuant to § 41-3-102, MCA. The record is clear that all procedural requirements were met in making this determination. It was only after appellant's failure to comply with two treatment plans and her failure to keep DFS comprised of her whereabouts for over ninety days that the termination proceedings were initiated. Upon the DFS petition for

8

termination of the parent-child relationship, Title 41, Chapter 3, Part 6, MCA, controlled.

Section 41-3-608, MCA, outlines the notice requirements applicable to parent-child relationship termination proceedings:

Before a termination of the parent-child legal relationship based on abandonment may be ordered, the court shall determine whether the rules of civil procedure relating to service of process on the parents have been followed. If the parents were not served personally, the petitioner must file an affidavit stating what efforts have been made to locate the parent or parents of the child. The affidavit must be filed at least 10 days prior to the hearing.

The record indicates DFS made substantial efforts to locate and serve appellant. Notwithstanding this fact, it is apparent appellant did not want to be found. It was after this unproductive search for appellant that DFS filed its affidavit outlining the efforts undertaken to locate appellant. The District Court found the notification efforts "were appropriate and that nothing further could have been done in order to obtain service of process on" appellant.

Additionally, appellant knew what was required of her to retain custody of her children. She was under actual notice from the onset of DFS involvement that her parental rights could be terminated should she fail to follow the court-ordered treatment plans. Due process requires notice and the opportunity to be heard. Byrd v. Columbia Falls Lions Club (1979), 183 Mont. 330,

332, 599 P.2d 366, 367. We hold the District Court properly held these elements to have been satisfied.

### III.

Did the District Court properly hold the appellant's motion to rescind the order terminating her parental rights was untimely?

Finally, appellant contends she was not notified of the termination of her parental rights and it was improper for the District Court to deny her motion for rescission of the termination order. This argument is without merit. At the hearing on the motion to rescind the termination order, appellant testified she learned of the termination of her parental rights the same day the District Court orally entered the termination order, August 26, 1991. However, nearly six months passed before appellant filed her motion to rescind.

The record supports the District Court's findings that the motion to rescind was untimely. The District Court did not abuse its discretion in denying appellant's motion.

We find no error with the District Court's rulings. Accordingly, judgment is affirmed.

Chief Justice

10

We concur:

_John Conway Harrison_

_William E Hunt Sr_

_R.C. McDonough_

_Justices_

October 8, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


E. June Lord
Attorney at Law
600 Central Plaza, Ste. 400
Great Falls, MT   59401

Ross Richardson
Attorney at Law
P.O. Box 399
Butte, MT   59703-0399

Mary Kay Starin
Attorney at Law
1100 Utah
Butte, MT   59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy